NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

In re:

LEVEL 8 APPAREL, LLC,

      Debtor.

----------------------------------------------------------------------x

ANGELA TESE-MILNER, as Trustee of the
Estate of Level 8 Apparel, LLC, Debtor,

      Plaintiff,

-against-

BON SEUNG KIM, a/k/a Sam Kim, a/k/a Scott Kim,
KUK JA KIM,
BOKYOUNG KIM,
FRANK SPADARO,
RICHARD ALOISI,
PETER LEWIS,
JUNGE CHAE,
JENNIFER SENGER,
CARLOS QUINTILIANI,
ON FIVE CORPORATION,
LIAISON APPAREL CORPORATION and
CAPSTONE CAPITAL GROUP, LLC,

      Defendants.

----------------------------------------------------------------------x

Chapter 7

Case No. 16-13164 (JLG)

Adv. Pro. No. 19-1335 (JLG)

## MEMORANDUM DECISION AND ORDER ON CAPSTONE CAPITAL GROUP, LLC'S MOTION TO DISMISS ADVERSARY PROCEEDING

**APPEARANCES:**

LAW OFFICE OF WILLIAM F. MACREERY
7 Granite Springs Road
Granite Springs, New York 10527
By:    William F. Macreery, Esq.

-and-

The Law Firm of Tese & Milner
735 Wickham Avenue, P.O. Box 35
Mattituck, New York 11952
By:      Michael M. Milner, Esq.

*Counsel for the Plaintiff-Trustee*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
By:      Tracy L. Klestadt
By:      Andrew C. Brown

*Counsel for Capstone Capital Group, LLC*

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

<u>INTRODUCTION</u>

Angela Tese-Milner is the chapter 7 trustee (the "Trustee") of the estate of Level 8
Apparel LLC (the "Debtor" or "Level 8") in this converted chapter 11 case.  In this adversary
proceeding she is seeking to recover damages for the alleged systematic diversion,
misappropriation and looting of the Debtor's business and assets both before and after the Debtor
commenced its chapter 11 case.  The Trustee's complaint (the "Complaint") names twelve
defendants (collectively, the "Defendants"), consisting of nine individuals and three entities.
*See* Complaint ¶¶ 1-14 [ECF No. 1].[1]  The individuals are: Bon Seung Kim ("Sam Kim");
Kuk Ja Kim ("Mrs. Kim" and, together with Sam Kim, the "Kims"), Sam Kim's wife; Bokyoung
Kim, Sam and Mrs. Kim' daughter in law; Frank Spadaro ("Spadaro"); Richard Aloisi; Peter
Lewis; Junge Chae; Jennifer Senger; and Carlo Quintiliani (the individuals collectively will be
referred to as the "Individual Defendants").  The entities are: Capstone Capital Group LLC
("Capstone"); On Five Corporation ("On Five"); and Liaison Apparel Corporation ("Liaison
Apparel").  Hereinafter, the Individual Defendants together with On Five and Liaison Apparel
collectively will be referred to as the "Insider Defendants."

The Complaint contains twenty-four claims for relief that are alleged against some or all
the Defendants.  *Id.* ¶¶ 82-215.  Without limitation, and in broad strokes, they include claims to
avoid and recover alleged fraudulent transfers, preferential transfers and unauthorized
post-petition transfers, and to recover damages for alleged fraud, conversion, breach of fiduciary

---

[1]    Citations to "ECF No. ___" refer to documents filed on the electronic docket of the instant Adversary
Proceeding (No. 19-1335).  Documents filed in the Debtor's main bankruptcy case or other cases will have the
appropriate "Case No." designation before the "ECF No.___" reference.

duty, misrepresentation and unjust enrichment, as well as aiding and abetting the primary

misconduct committed by other Defendants.  Capstone is named in nine counts in the Complaint.

The matter before the Court is Capstone's motion to dismiss those Counts pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (the "Motion").[2]  The Trustee

opposes the Motion (the "Opposition").[3]  For the reasons set forth herein, the Court grants the

Motion, but with leave for the Trustee to replead.

## JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(E), (F), (H), & (K).

## FACTS[4]

Background

On February 11, 2009, Sam Kim and others formed the Debtor to engage in the business

of designing, producing samples for buyers, sourcing, arranging manufacturing, importing and

selling men's and women's apparel and outerwear under licensed trademarks and private labels

for large retailers.  *See* Complaint ¶ 22.  The Debtor's customers and business relationships

---

[2]   *See Motion to Dismiss—Memorandum of Law in Support of Defendant Capstone Capital Group, LLC's Motion to Dismiss Adversary Proceeding* [ECF 7]; *Reply Memorandum of Law in Further Support of Defendant Capstone Capital Group, LLC's Motion to Dismiss Adversary* [ECF No. 27].  Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[3]   *See Trustee's Memorandum of Law in Opposition to the Motion by Capstone Capital Group, LLC to the Motion by Capstone Capital Group, LLC to Dismiss the Complaint Filed in this Adversary Proceeding* [ECF No. 20].

[4]   As explained below, the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint.  Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").

included Costco Wholesale Corporation ("Costco") and its Kirkland Signature line of apparel, as

well as Burlington Merchandising Corporation, Amazon, Blue Fly, Bon Ton, Gilt, Groupon and

Liverpool (collectively, the "Customers").  *See id.* ¶¶ 46, 47.  On November 14, 2016

(the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 in this Court.[5]

Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code it remained in possession and

control of its business and assets as a debtor in possession until August 22, 2018

(the "Conversion Date"), when its case was converted to one under chapter 7 and the Trustee

was appointed.  *See Order Dated 8/22/2018 Granting Motion to Convert Chapter 11 Case to

Chapter 7* [Case No. 16-13164, ECF No. 125].

    The Trustee contends that prior to the Petition Date, during the Debtor's chapter 11 case,

and after the Conversion Date, the Individual Defendants engaged or participated in a systematic

and continuous fraudulent scheme to divest the Debtor of its assets in order to shield them from

the Debtor's creditors.  *See id.* ¶ 38.  She maintains that the alleged fraudulent scheme included

looting, misappropriating, converting and diverting all the Debtor's assets, business and

Customers from the Debtor to its affiliated companies, On Five and Liaison Apparel.  *Id.*  She

says that those entities were formed for the specific purpose of participating in the alleged

scheme.  *See id.*  The Trustee contends that the Kims hatched the scheme in May 2015 when they

began to loot the Debtor by causing it to make cash payments to them, for no consideration.  She

says that through the Petition Date, those cash transfers and payments aggregated $330,280.00.

*See id.* ¶¶ 28, 29.  The Kims took that action at the same time that Sam Kim and the Debtor were

engaged in lawsuits with Stuart's LLC ("Stuart's") and Wayne Galvin ("Galvin"), and with

---

[5]    That day, World Cross Culture, Inc., an affiliate of the Debtor also filed a chapter 11 petition herein.  *See*
Petition [Case No. 16-13166, ECF No. 1].  It is not a party to this litigation.

Weihai Textile Group ("Weihai"), which lawsuits ultimately resulted in the entry of judgments

aggregating more than $4,500,000 against Sam Kim and the Debtor. *See id.* ¶¶ 24, 25, 27.  In

October 2015, shortly after the conclusion of the trials in the Stuart's-Galvin and Weihai

lawsuits, Sam Kim furthered the scheme by causing the Debtor to enter into a "Sales

Representative Agreement" with Capstone. *See id.* ¶ 30.  The Trustee asserts that the agreement

is a one-sided agreement that heavily favors Capstone because it places all assets of the Debtor's

business with Capstone and obligates the Debtor to perform valuable services for Capstone for

an unspecified and uncertain commission. *See id.* ¶¶ 31-32.  In sum, the Trustee asserts that the

agreement turned the Debtor into a shell company with no identifiable assets besides the

workforce, and unlimited potential liabilities. *Id.*

The Trustee maintains that Bokyoung Kim took the next step in the alleged fraudulent

scheme in March 2016 when she formed On Five and capitalized the business with $580,000 of

the Debtor's funds that the Debtor transferred to On Five during the period of March 11, 2016

through April 12, 2016. *See* Complaint ¶ 39.  The Debtor allegedly received no consideration for

those payments. *See id.* ¶ 106.  The Trustee says that almost immediately after On Five was

formed, Sam Kim, Spadaro, Richard Aloisi, Peter Lewis, Jennifer Senger, and Junge Chae began

to work for On Five, and funneled all of the Debtor's business and Customers to On Five, other

than the business associated with Costco's Kirkland Signature brand, which remained with the

Debtor until the Conversion Date. *See id.* ¶¶ 43-52.  She contends that those Individual

Defendants misappropriated and steered the Debtor's business opportunities to On Five by

(a) negotiating license agreements on behalf of On Five for sale to the Debtor's Customers,

including Costco; (b) advising the Debtor's Customers that On Five was merely a new name for

Level 8; (c) transferring existing orders and new purchase orders from the Debtor's Customers to

4

On Five; (d) causing Customers to reissue checks payable to the Debtor, to On Five; and (e) securing purchase orders with On Five for Tahari branded products that On Five had no license to sell. *See id.* She maintains that through those actions, those Defendants diverted revenues of more than $2,200,000 from the Debtor to On Five. *Id.* The Trustee complains that the Individual Defendants compounded the financial damage that they allegedly inflicted on the Debtor by remaining on the Debtor's payroll, even as they were working adversely to the best interests of the Debtor. The Trustee says that during the six month period beginning on March 2, 2016, when On Five was formed, through the Petition Date, the Debtor paid Spadero, Aloisi, Lewis, Senger, and Chae compensation totaling $418,573.76, while they were secretly performing work for On Five and diverting the Debtor's business to On Five. *See id.* ¶¶ 53-57. She maintains that those Individual Defendants remained on the Debtor's payroll after the Petition Date and for the nearly two years that the Debtor remained in chapter 11 and were paid salaries aggregating $902,895.35, even as they continued to work for On Five. *See id.* ¶¶ 63-68.

The Trustee asserts that the Individual Defendants took the last step in furtherance of the alleged scheme on August 30, 2018, after the Conversion Date, when they formed Liaison Apparel to conduct the same type of business as On Five and the Debtor. *See id.* ¶ 13. She says the On Five and Liaison Apparel assumed the Debtor's payroll on and after the Conversion Date (*see id.* ¶ 76), and the Insider Defendants continued to conduct business with Capstone, Costco, and other former customers of the Debtor, in the name of On Five and Liaison Apparel. *See id.* ¶ 77. She also contends that between September 28, 2018 and July 2019, Capstone made payments totaling $1,885,941.72 to On Five under conventional factoring arrangements, including $979,264.57 associated with sales to Costco Mexico improperly diverted from the Debtor to On Five prior to the Conversion Date. *Id.* ¶ 79.

Rule 12(b)(6) Pleading Standards

A Rule 12(b)(6) motion is "designed to test the legal sufficiency of the complaint, and thus does not require the [c]ourt to examine the evidence at issue." *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citing *Carey v. Mt. Desert Island Hosp.*, 910 F. Supp. 7, 9 (D. Me. 1995)); *see also Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998) (noting that under Rule 12(b)(6), the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims" (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir. 1996))).  In resolving a Rule 12(b)(6) motion, a court must "accept all factual allegations in the complaint as true," even if the allegations are doubtful in fact. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 309 (2007); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554 (2007) ("*Twombly*").  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "even if [a document] is not formally incorporated by reference" a court may consider it if it was "integral to the complaint." *Id.* at 153 (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (noting that district court may consider exhibits omitted from plaintiff's complaint but attached as exhibits to defendant's motion papers because "there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim").  A court also may consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. at 322; *see also Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (stating that even where the proceeding transcripts were not attached to the complaint, incorporated by reference, or integral to the

plaintiff's claims, they could still be considered because the Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment").

In resolving a Rule 12(b)(6) motion, courts assess the sufficiency of the complaint in light of the pleading requirements in Rule 8 of the Federal Rules of Civil Procedure ("Rule 8").[6] Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Under Rule 8's "liberal" notice pleading standards, "the pleader need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief." *Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169, 176 (Bankr. S.D.N.Y. 2010) (citation omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").  Thus, Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged[.]" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (citation omitted).  However, it requires that each defendant is given "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.*, 507 B.R. 452, 459-60 (Bankr. S.D.N.Y. 2014) (explaining that under Rule 8(a), "a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" (citation omitted)).  Accordingly, the "short and plain statement" called for in Rule 8 must provide "enough facts to state a claim to relief that is plausible on its face."

---

[6]    Rule 8 is made applicable herein by Bankruptcy Rule 7008.

*Twombly*, 550 U.S. at 547.  In other words, the plaintiff must plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*"); *see also Pension Ben. Guar.*

*Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712

F.3d 705, 729 (2d Cir. 2013).

To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570); *cf. Matson v.*

*Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 72 (2d Cir. 2011) ("The corollary to

Rule 8(a) is that a complaint attacked on a motion to dismiss pursuant to Rule 12(b)(6) will

survive so long as the factual allegations—viewed in a light most favorable to the plaintiff and

drawing all reasonable inferences in her favor—are sufficient to 'raise a right to relief above the

speculative level' and present a claim that is 'plausible on its face.'" (citation omitted)) (Straub,

J., concurring in part and dissenting in part).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570.

Where, as here, the Complaint includes claims against Capstone seeking to avoid

transfers of estate property as actual fraudulent conveyances under federal and state law pursuant

to section 548(a)(1)(A) (Count 1) and section 544 of the Bankruptcy Code (Count 2),

respectively, and for damages occasioned by Capstone's alleged aiding and abetting of the other

Defendants' fraud (Counts 16, 17, and 21), those claims must satisfy the additional pleading

requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").[7]  *See Sharp Int'l*

---

[7]    Rule 9 is made applicable herein by Bankruptcy Rule 7009.

*Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005);

*see also In re Bernard L. Madoff Inc. Sec. LLC*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

("Actual fraudulent transfer claims brought under either section 548(a)(1)(A) of the Code or

section 276 of the NYDCL must meet the heightened pleading requirements of Rule 9(b) of the

Federal Rules of Civil Procedure." (citations omitted)).  Under that rule, a plaintiff alleging fraud

must state "the circumstances constituting fraud . . . with particularity."  Fed. R. Civ. P. 9(b).

Accordingly, the party asserting an intentional fraudulent transfer claim must "specify the

property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent

conveyances, [and] the consideration paid."  *United Feature Syndicate, Inc. v. Miller Features

Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002); *accord Flannigan v. Vulcan Power

Grp., L.L.C.,* 712 F. Supp. 2d 63, 67 (S.D.N.Y. 2010); *Adelphia Recovery Tr. v. Bank of Am.,

N.A.,* 624 F. Supp. 2d 292, 336 (S.D.N.Y. 2009).

Because proving actual fraudulent intent is difficult, to support its case, "the pleader is

allowed to rely on 'badges of fraud' . . . i.e., circumstances so commonly associated with

fraudulent transfers that their presence gives rise to an inference of intent."  *In re Sharp Int'l

Corp.*, 403 F.3d at 56 (citation omitted) (finding badges applied to pleading of state law claim of

intentional fraudulent claim); *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir.

1983) (applying badges of fraud in finding actual fraud).  Common badges of fraud include:

(1)     lack or inadequacy of consideration;

(2)     the family, friendship or close associate relationship between the parties;

(3)     the retention of possession, benefit or use of the property in question;

(4)     the financial condition of the party sought to be charged both before and after the
transaction in question;

(5)     the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

(6)     the general chronology of the events and transactions under inquiry;

(7)     a questionable transfer not in the usual course of business; and

(8)     the secrecy, haste, or unusualness of the transaction.

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005); *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529, 684 S.2d 244, 247 (1999). The existence of a badge of fraud is merely circumstantial evidence and does not constitute conclusive proof of actual intent.  However, the existence of several badges of fraud can constitute clear and convincing evidence of actual intent.  *See* 5 Collier on Bankruptcy, ¶ 548.04[1][b][ii] (16th ed. 2020).

"Due to trustee's status as an outsider, courts will accept allegation of circumstantial evidence to establish fraudulent intent, including "badges of fraud."  *In re Park South Secs., LLC*, 326 B.R. 505, 517-518 (Bankr. S.D.N.Y. 2005).  In an action commenced by a bankruptcy trustee*, "*courts take a more liberal view when examining allegations of actual fraud . . . in the context of a fraudulent conveyance, 'since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'"  *Nisselson v. Softbank AM Corp. (In re Market XT Holdings Corp.),* 361 B. R. 369, 395 (Bankr. S.D.N.Y. 2007*); see also In re Dreier LLP*, 452 B.R. 467, 477 (Bankr. S.D.N.Y. 2011) ("Courts have recognized that 'allegations of circumstantial evidence are sufficient to establish fraudulent intent,' *Pereira v. Grecolas Ltd. (In re Saba Enters., Inc.),* 421 B.R. 626, 643 (Bankr.S.D.N.Y.2009)*,* because 'the trustee's lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time.'").

10

<u>The Complaint and the Motion</u>

The Trustee names Capstone in nine counts in the Complaint.  In sum and substance, in those counts the Trustee purports to assert that Capstone defrauded the Debtor, converted or misappropriated its property, wrongfully obtained the Debtor's assets for no consideration, and/or aided and abetted other Defendants in such actions.  The Trustee seeks to (i) avoid and recover certain alleged preferential and fraudulent transfers, including unauthorized pre and post-petition transfers,[8] (ii) recover damages for aiding and abetting the alleged fraud, illegal post-petition transfers, and conversion of the Debtor's assets and business committed by certain other Defendants,[9] (iii) recover damages for Capstone's unjust enrichment,[10] (iv) recover damages for Capstone's misrepresentations,[11] and (v) disallow and subordinate Capstone's claims.[12]

In support of the Motion, Capstone says that, at best, the Complaint merely asserts that the Debtor is a victim of a scheme pursuant to which it was deprived of "assets" and other

---

[8]    In Counts 1, 2, and 3, the Trustee seeks to avoid and recover assets transferred to Capstone (i) as alleged actual and constructive fraudulent transfers under sections 544, 548, 550 of the Bankruptcy Code and sections 273, 276 and 278 of the New York Debtor and Creditor Law ("NYDCL"); (ii) preferential transfers under sections 547 and 550 of the Bankruptcy Code; and (iii) alleged pre-petition fraudulent transfers and illegal post-petition transfers pursuant to sections 544, 548, 549 and 550 of the Bankruptcy Code and sections 273, 276 and 278 of the NYDCL, and recover damages for conversion of assets.  The NYDCL was amended effective April 4, 2020.  The amended statute applies to transactions occurring on or after April 4, 2020.  *See* NY LEGIS 580 (2019), 2019 Sess. Law News of N.Y. Ch. 580 (A. 5622) (McKINNEY'S).  As such, the amendments are inapplicable to this matter.

[9]    In Counts 16 and 17, the Trustee seeks to recover damages from Capstone for aiding and abetting the alleged fraudulent transfers, illegal post-petition transfers, and conversion of assets of certain other Defendants.

[10]    In Count 18, the Trustee seeks to recover damages for unjust enrichment from all Defendants, including Capstone.

[11]    In Count 21, the Trustee seeks damages from Capstone for failure to disclose certain alleged misrepresentations to this Court by Defendant Spadaro and counsel for the Debtor.

[12]    In Counts 23 and 24, the Trustee seeks to disallow the claims of Capstone pursuant to sections 502, 522, 543-545, 547-550, 553, or 724(a) of the Bankruptcy Code, and to disallow and subordinate those claims pursuant to section 510(c) of the Bankruptcy Code.

11

"valuable business opportunities and arrangements."  Capstone argues that the Trustee fails to

identify such lost assets or opportunities or to specify Capstone's involvement in the alleged

scheme.  It argues that the Court should dismiss it from the Complaint because none of the seven

claims asserted against it, pursuant to which the Trustee seeks to avoid transfers and recover

assets, plead actions it took, or did not take, with particularity, as required under Rule 12(b)(6).

Capstone also asserts that the Trustee misplaces her reliance on the Sales Representative

Agreement as a basis for asserting that Capstone was transferred assets belonging to the Debtor,

because that agreement does not contain any conveyancing or transfer language of the type

asserted by the Trustee, or even the existence of any property of Level 8.

       As further described below, the Court grants the Motion.  Although the individual counts

seek relief under several different legal theories, the overarching theme of the Trustee's

allegations in support of those claims is that they are overly broad and fail to allege the facts

necessary to provide Capstone with fair notice of the Trustee's claims or whether she has a legal

basis for recovery.  However, the Trustee is granted leave to address the deficiencies in the

Complaint and replead the counts alleged against Capstone.  *See, e.g.*, *Official Comm. of*

*Unsecured Creditors of Hydrogen L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 363

(Bankr. S.D.N.Y. 2010) ("Federal Rule of Civil Procedure 15(a)(2) states that following an

initial amendment to a complaint, further leave to amend should be freely granted at the court's

discretion when justice so requires."); *Smugglers Notch Homeowners' Ass'n, Inc. v. Smugglers'*

*Notch Mgmt. Co., Ltd.*, 414 F. App'x 372, 377 (2d Cir. 2011) ("When a motion to dismiss is

granted, the usual practice is to grant leave to amend the complaint.") (citation omitted); *see also*

*Rossi v. Morse (In re Morse)*, No. 17-61271, 2018 WL 3617760, at *7 (Bankr. N.D.N.Y. July 26,

2018), *appeal dismissed sub nom. Morse v. Estate of Rossi*, No. 6:18-CV-940, 2019 WL

12

1900487 (N.D.N.Y. Apr. 29, 2019) (dismissing, pursuant to Rule 12(b)(6) motion, plaintiff's

claim under 11 U.S.C. § 523(a)(4) but allowing plaintiff to replead the claim); *Weisfelner v.*

*Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 134 (Bankr. S.D.N.Y. 2016) (granting

motion to dismiss under Rule 12(b)(6) on counts 14 and 19 for lack of personal jurisdiction but

granting leave to the litigation trustee to amend the complaint to remedy its jurisdictional

deficiencies).

<u>DISCUSSION</u>

**<u>Counts 1 & 2 – Avoidance and Recovery of Fraudulent Transfers</u>**

In Count 1 of the Complaint, the Trustee seeks to avoid the Sales Representative

Agreement, the obligations incurred under such agreement and the transfer effected by such

agreement, as intentionally fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy

Code.  *See* Complaint ¶¶ 85.  She asserts that in entering into that agreement, the Debtor

transferred virtually all its assets, including its "valuable business arrangements" and

"opportunities," to Capstone.  *Id.* ¶ 84.  She says that Sam Kim and Mrs. Kim, as the Debtor's

principals, entered into the agreement as part of a common plan and scheme to divest the Debtor

of all of its assets and/or divert and shield all of those assets from the Debtor's creditors.  She

maintains that the Debtor and its principals did so with the actual intent to hinder, delay and

defraud the Debtor's creditors, including Galvin, Stuart's, and Weihai.  *Id.* ¶¶ 83-84.  She

contends that as such, the Sales Representative Agreement, the obligations incurred thereunder,

and transfers effected by such agreement should be avoided under section 548(a)(1)(A) of the

Bankruptcy Code.  She also maintains that under section 550(a)(1) of the Bankruptcy Code, she

is entitled to recover from Capstone the value of the assets and business opportunities that were

13

fraudulently transferred to Capstone under the agreement in an amount to be determined at trial. *Id*. ¶ 86.

The Trustee seeks identical relief from Capstone in Count 2 of the Complaint, albeit under state law pursuant to sections 544(a) and (b) of the Bankruptcy Code, and sections 276 and 278 of the NYDCL. *See id*. ¶¶ 89-91. She asserts that, as of the Petition Date, by application of sections 544(a)(1) and (2) of the Bankruptcy Code, she was vested with the rights and powers of a hypothetical judicial lien creditor and an execution lien creditor. *Id.* ¶ 88. She also contends that under section 544(b)(1) of the Bankruptcy Code, she can avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code, and that Galvin, Stuart's, and Weihai and other creditors have filed proofs of claim that are allowable under section 502. *Id.* ¶¶ 89-90. She alleges that she is entitled to a judgment avoiding the Sales Representative Agreement, the obligations incurred under such agreement, and the transfer effected by such agreement under sections 544(a)(1) and (2) of the Bankruptcy Code, and sections 276 and 278 of the NYDCL. *Id.* ¶ 91. She also maintains that under section 550(a)(1) of the Bankruptcy Code, she is entitled to recover from Capstone the value of the assets and business opportunities that were fraudulently transferred to Capstone under the agreement in an amount to be determined at trial. *Id.* ¶ 92.

Capstone makes two arguments in support of its motion to dismiss Counts 1 and 2. It argues that the Sales Representative Agreement is an executory contract, and that the motion fails as a matter of law because section 365 of the Bankruptcy Code is the exclusive provision for dealing with executory contracts in bankruptcy. Motion at 9-11. Capstone also asserts that Counts 1 and 2 do not state claims for relief and should be dismissed pursuant to Rule 12(b)(6),

14

because the Trustee has failed to allege any fraudulent transfers, let alone actual fraudulent

transfers, from the Debtor to Capstone, and, in any event, assuming the truth of the allegations in

support of those Counts, the Complaint fails to plead an actual intent to defraud on Capstone's

part.  *Id.* at 6-7.  The Court considers those arguments below.

Capstone asserts that, as a matter of law, the Trustee cannot avoid the Sales

Representative Agreement as a fraudulent transfer because that agreement is an executory

contract, and section 365 of the Bankruptcy Code "is the exclusive provision for dealing with

executory contracts in bankruptcy."  Motion at 9.[13]  The Trustee denies that the Complaint

---

[13]    As support for that general proposition, Capstone cites: *Compton v. Mustang Engineering Ltd. (In re MPF Holding U.S. LLC)*, 495 B.R. 303, 321 (Bankr. S.D. Tex. 2013); *LHD Realty Corp. v. Met. Life. Ins. Co. (In re LHD Realty Corp.*, 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982); and *In re Robinson Truck Line, Inc.*, 47 B.R. 631, 638 (Bankr. N.D. Miss. 1985).  While the bankruptcy courts in those cases applied section 365 to the issues before them, they do not support Capstone's objection.

In *MPF Holding*, the trustee of a litigation trust brought an adversary proceeding to recover allegedly preferential payments to defendant "Mustang," that were made pursuant to a contract that was assumed by the debtor and assigned to a purchaser pursuant to the debtor's plan and section 365 of the Bankruptcy Code.  Mustang moved to dismiss the action, arguing that the trustee lacked standing under FRCP 12(b)(1) because he was barred from pursuing the preference action under the contract assumption defense—*i.e.*, the contract had been assumed and assigned by the debtor, and even if the contract at issue had not been assumed and assigned under section 365, the action was released under the debtor's plan and confirmation order.  *MPF Holding*, 495 B.R. at 307.  In opposing the dismissal, the litigation trustee argued that the Mustang contract was not assumed and assigned under section 365 of the Bankruptcy Code, but rather under section 363.  The bankruptcy court rejected that argument, finding that, as an initial matter, the Mustang contract was an executory contract (and was listed as such in the debtor's schedule), and was, under the plain language of the debtor's plan and confirmation order, assumed and assigned under section 365 of the Bankruptcy Code.  *Id.* at 316-317.  In noting that section 365 of the Bankruptcy Code is the "exclusive means of dealing with executory contracts in chapter 11," the court was making clear that section 365 is the "exclusive means of effectuating assumption and assignment of executory contracts in bankruptcy," and not section 363, as argued by the litigation trustee, or section 1123 in cases of assumption and assignment pursuant to a plan, as in the case of *Robinson Truck Line, Inc.*, 47 B.R. at 637.  *See id.* at 319.

As relevant, in *Robinson Truck Line* the issue before the court was whether the debtor was required to pay the pre and post-petition delinquencies due under its pension plan, which it assumed as part of its chapter 11 plan, as a priority claim under section 507 of the Bankruptcy Code immediately upon the assumption of the agreement, or whether it could defer payment by providing adequate assurance of prompt payment of such amounts under section 365.  *See Robinson Truck Line*, 47 B.R. at 636-637.  In resolving the seeming conflict in payment priority in sections 365(b)(1)(A) and 1129(a)(9), the court concluded that section 1123(b)(2), which governs the contents of a plan, specifically provides that the assumption or rejection of a debtor's executory contract in a plan is subject to section 365.  The *Robinson Truck* court concluded that the debtor should be permitted to use the less rigorous payment of cure requirements under section 365(b)(1)(A) of the Bankruptcy Code.  *Id.* at 638-639.

Finally, in *In re LHD Realty Corp.*, the matter before the court was the debtor/lessor's complaint to terminate or modify a lease under section 365 of the Bankruptcy Code, or alternatively, under the doctrine of commercial

implicates section 365 at all because the Sales Representative Agreement is not an executory

contract and, in any event, she is not seeking to terminate that agreement. *See* Opposition at

19-20. She says that the Sales Representative Agreement was void *ab initio* as fraudulent and

that she is entitled to recover damages equal to the value of the assets and interests transferred, or

the obligations incurred, under the agreement. *See id.*

In contesting that position, Capstone relies on two lines of cases. First, it cites to cases

that support the proposition that based upon policy considerations, the desire for finality of

determinations of property rights, deference for state court judgments, and/or principles of

statutory construction, the avoidance provisions of sections 544, 547 and 548 of the Bankruptcy

Code should not be utilized to resuscitate a lease or contract that had been validly terminated

pre-petition in accordance with state law or the terms of the agreement or lease.[14] Those cases

---

impracticability for equitable relief. *In re LHD Realty Corp.*, 20 B.R. at 718-719. The lessee, "MetLife," opposed
the alternative claim for relief, arguing that the doctrine of commercial impracticability was not available to the
debtor because section 365 of the Bankruptcy Code only allowed the debtor to assume or reject the lease, not to
modify or terminate it. *See id.* The court agreed, noting that under section 365(h) of the Bankruptcy Code, where
the debtor is the lessor, in the event of rejection, a lessee may 'treat the lease as terminated by such rejection, or . . .
remain in possession for the balance of the term of such lease" and that such provision reflected Congress' clear
intent to afford the debtor the benefit of rejection (of an undesirable lease or terms), while protecting the lessee's
interests in the property. Further, the Bankruptcy Court further noted that it would be "dangerous precedent" to be
in the business of modifying contracts and leases in a debtor's favor based on economic conditions in the name of
equity. *See id.* at 720. As a consequence, the *LHD* Court concluded that the debtor could not utilize the doctrine of
impracticability to modify or terminate the lease but had to look to section 365 to either assume or reject the cases.
*Id.*

The Trustee correctly notes that she is not seeking to terminate, assume or reject, or otherwise modify the terms
of the Sales Representative Agreement. Nor has there been any plan, confirmation, or other order addressing the
assumption or rejection of the Sales Representative Agreement, or the effects therefrom. As such, although these
cases support the proposition that section 365 of the Bankruptcy Code is the exclusive section dealing with the
assumption or rejection of the Debtor's executory contracts, the assumption or rejection of the Sales Representative
Agreement is simply not the issue here.

[14]   *See 130/40 Essex Street Dev. Corp. v. The City of N.Y. (In re 130/40 Essex Street Dev. Corp.)*, No. 03-40944,
2008 WL 4845639, at *6 (Bankr. S.D.N.Y. Oct. 22, 2008) (utilizing the principles of statutory construction, finding
that section 365(c)(3) of the Bankruptcy Code controlled as it explicitly governed pre-petition terminations of
non-residential leases); *Haines v. Regina C. Dixon Trust (In re Haines)*, 178 B.R. 471, 474 (Bankr. W.D. Mo. 1995)
(finding that allowing avoidance of non-collusive prepetition lease terminations would make it "impossible to settle
rights in real property" as landlords would not be allowed to rely upon state court judgements but instead "must wait
until the statute of limitations on fraudulent transfer actions has passed"); *Robinson v. Chicago Hous. Auth.*, No. 94
C 4781, 1995 WL 360706, at *3, *5 (N.D. Ill. June 14, 1995) (as a matter of statutory construction, refusing to allow

are inapplicable because the Trustee is not seeking to use sections 544 and 548 to avoid a

pre-petition termination of the Sales Representative Agreement so as to resuscitate the agreement

for assumption.

Second, Capstone cites to *Smith v. Ball (In re Smith)*, 71 B.R. 754, 758 (M.D. La. 1987)

and *McCannon v. Marston*, 679 F.2d 13, 17 (3d Cir. 1982) in support of its assertion that when

faced with a conflict between application of section 365 and the avoidance provisions of the

Bankruptcy Code, courts will apply section 365.  *See* Motion at 9-10.  In *McCannon*, the court

found that a trustee was not permitted to avoid an equitable interest in real property under section

544(a)(3), as state law prohibited such avoidance if the trustee had constructive notice of

possession.  *McCannon*, 679 F.2d at 17.  Further, the Third Circuit noted in *dicta* that section

365(i) provided specific protections in cases, like *McCannon*'s, where a debtor sought to reject

an executory contract for the sale of real property under which the purchaser was in possession,

which would not be given any effect if debtors could circumvent section 365(i) by avoiding the

interest through section 544(a)(3).  *See id.* at 18.  Likewise, in *In re Smith*, the court found that

the debtors were not permitted to avoid a post-petition contract to sell property under state

avoidance law, and further that the purchase agreement was controlled by the specific language

in section 365(i).  *See In re Smith*, 71 B.R. at 758.  Those decisions are irrelevant to the matters

at issue herein, since the Trustee is not seeking to utilize her avoidance powers in a way that

conflicts with section 365.  First, as discussed above, the Trustee is not invoking section 365 of

the Bankruptcy Code at all.  Second, in contrast to *Smith* and *McCannon*, section 365(i) of the

---

avoidance of a pre-petition termination as it would render section 365 inoperable as no termination would be final
until the statute of limitations had run, and as a matter of policy, allowing such avoidance would allow tenants to
circumvent their leases); and *In re Egyptian Bros. Donut, Inc.*, 190 B.R. 26, 29 (Bankr. D.N.J. 1995) (on policy
grounds, finding that allowing avoidance of prepetition terminations would adversely affect ordinary commercial
contractual relationships).

Bankruptcy Code is not applicable herein, and Capstone has not demonstrated that any element

of section 365 conflicts with the Trustee's claims to avoid the Sales Representative Agreement.

Moreover, none of the cases that Capstone cites hold that section 365 prohibits a trustee from

avoiding a contract, transaction, or transfer as constructively or intentionally fraudulent under the

avoidance sections of the Bankruptcy Code.

In sum, the legal principles underlying the cases cited by Capstone regarding application

of section 365 are not implicated in this case.  Capstone has not established, at this stage of the

litigation, that the Trustee's claims to avoid the Sales Representative Agreement as a fraudulent

transfer fail on the basis that they run afoul of section 365 of the Bankruptcy Code.

Alternatively, Capstone contends the Court must dismiss Counts 1 and 2 because, even

assuming the truth of the allegations in the Complaint, the Trustee has failed to plead claims for

relief under either section 548(a)(1)(A) of the Bankruptcy Code and or section 276 of the

NYDCL.  As relevant, section 548 of the Bankruptcy Code states:

> (1) The trustee may avoid any transfer . . .  of an interest of the debtor in property,
> or any obligation . . . incurred by the debtor, that was made or incurred on or within
> 2 years before the date of the filing of the petition, if the debtor voluntarily or
> involuntarily—
>
>> (A) made such transfer or incurred such obligation with actual intent to
>> hinder, delay, or defraud any entity to which the debtor was or became, on
>> or after the date that such transfer was made or such obligation was incurred,
>> indebted . . . .

11 U.S.C. § 548(a)(1)(A).  To state a claim against Capstone for relief under section

548(a)(1)(A), the Trustee must allege facts with particularity, demonstrating that within two

years of the Petition Date, the Debtor transferred an interest in its property to Capstone with the

actual intent to hinder, delay or defraud a creditor.  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, 608 B.R. 165, 173 (Bankr. S.D.N.Y. 2019) ("Thus, the elements of an intentional

18

fraudulent transfer claim under section 548(a)(1)(A) are: (i) a transfer of an interest of the debtor in property; (ii) made within two years of the petition date; (iii) with 'actual intent to hinder, delay, or defraud' a creditor.") (citing *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 Civ. 9050 (LMM), 2011 WL 1419617, at \*2 (S.D.N.Y. Apr. 7, 2011), *aff'd*, 748 F.3d 110 (2d Cir. 2014)); *see also In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 808 ("Section 548(a)(1)(A) of the Bankruptcy Code permits the trustee to avoid a transfer if he can establish: (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within [two years] of the filing of the bankruptcy petition; and (3) that the transfer was incurred with actual intent to hinder, delay, or defraud present or future creditors." (citing *Balaber–Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.),* 256 B.R. 664, 675 (Bankr. S.D.N.Y. 2000))).

Section 276 of the NYDCL is the state law counterpart to section 548(a)(1)(A). "Section 544 enables a trustee to use state law to avoid any transfer that an unsecured creditor could have avoided outside of bankruptcy." *In re Int'l Auction & Appraisal Servs. LLC*, 493 B.R. 460, 463 (Bankr. M.D. Pa. 2013). Capstone does not deny that the Trustee can invoke section 276 herein. That section states:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

NYDCL § 276. Akin to section 550 of the Bankruptcy Code, section 278 of the NYDCL provides for the recovery of a fraudulent conveyance avoided under sections 273-277 of the NYDCL.[15] *See, e.g.*, *CNB Int'l Inc. v. Lloyds TSB Bank plc (In re CNB Int'l, Inc.)*, 440 B.R. 31,

---

[15]    Section 278 of the NYDCL states, as follows:

1.    Where a conveyance or obligation is fraudulent as to a creditor, such  creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at  the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

41 (W.D.N.Y. 2010) ("Where a fraudulent transaction has occurred, NYDCL § 278 delineates

the extent of a transferee's liability to a creditor harmed by such a transaction."); *Jacobs v.*

*D'Alessandro (In re Dewey & LeBoeuf LLP)*, No. 12-12321 (MG), 2014 WL 4746209, at *11

(Bankr. S.D.N.Y. Sept. 23, 2014) ("NYDCL section 278 allows the creditor to set aside or

disregard the conveyance.").

To state a claim for relief under section 276, the Trustee must allege facts with

particularity demonstrating that, within six years of the Petition Date, the Debtor transferred an

asset of value to Capstone from which a creditor could have satisfied a portion of its claim, and

did so with actual intent to defraud.[16]  *See, e.g.*, *Kittay v. Flutie New York Corp. (In re Flutie*

*New York Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004) ("To prevail on a claim under section

276 of the New York Debtor and Creditor law, the Trustee must establish that (1) the thing

transferred has value out of which the creditor could have realized a portion of its claim; (2) that

---

    a.   Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

    b.   Disregard the conveyance and attach or levy execution upon the property conveyed.

2.  A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

NYDCL § 278.

[16]   Section 213(8) of the NYCPLR states:

The following actions must be commenced within six years:
           \*        \*        \*
an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

NYCPLR § 213(8).  "The claim for actual fraud pursuant to NYDCL § 276 is governed by a limitations period of six years from the date of the alleged fraud or two years from the date of discovery, whichever is later."  *Lippe v. Bairnco Corp.*, 225 B.R. 846, 852-53 (S.D.N.Y. 1998), *on reargument in part*, 229 B.R. 598 (S.D.N.Y. 1999), *aff'd*, 99 F. App'x 274 (2d Cir. 2004).  Section 213 of the NYCPLR was amended on August 25, 2019 to add new section 213(9).  NY LEGIS 184 (2019), 2019 Sess. Law News of N.Y. Ch. 184 (S. 6536) (McKINNEY'S).  It states that "an action by the attorney general pursuant to article twenty-three-A of the general business law or subdivision twelve of section sixty-three of the executive law" must be commenced within six years.  NYCPLR § 213(9).  It has no bearing on this matter.

this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud." (citing *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2000))); *see also Chambers v. Weinstein*, 44 Misc. 3d 1224(A), 997 N.Y.S.2d 668, *7 (N.Y. Sup. 2014), *aff'd*, 135 A.D.3d 450, 21 N.Y.S.3d 892 (2016) ("To allege a claim under DCL § 276, the claimant must allege that 'the thing transferred has value of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by the debtor and (3) that the transfer was done with actual intent to defraud." (citing *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 37 (Bankr. E.D.N.Y. 2006)).  Unlike section 548(a)(1)(A) of the Bankruptcy Code, New York law requires fraudulent intent of both the transferor and the transferee.  *See Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505, 517-18 (Bankr. S.D.N.Y. 2005) ("The 'intent' that must be established under section 548(a) is the *debtor's* actual fraudulent intent; under section 276 of the [NYDCL], however, the [t]rustee must establish both the debtor's *and* the transferee's actual fraudulent intent." (emphasis in original)); *In re Manhattan Inv. Fund Ltd*., 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002) (holding that under NYDCL 276, a cause of action must allege fraudulent intent on the part of the transferor as well as the transferee).

Because claims under section 548(a)(1)(A) of the Bankruptcy Code and section 276 of the NYDCL sound in fraud, the Trustee must satisfy the heightened pleading requirements in Rule 9(b) for both Counts 1 and 2.  *See, e.g.*, *In re Saba Enters., Inc.*, 421 B.R. at 640 ("Rule 9(b) of the Federal Rules of Civil Procedure, made applicable hereto by Rule 7009 of the Federal Rules of Bankruptcy Procedure, governs the pleading of intentional fraudulent conveyance claims brought under both Section 548 of the Code and Section 276 of the NYDCL."); *see also In re Tribune Co., Fraudulent Conveyance Litig.*, No. 11MD2296 (DLC),

2019 WL 294807, at *33 (S.D.N.Y. Jan. 23, 2019) (stating that "[b]ecause a Section

548(a)(1)(A) claim sounds in fraud, the Trustee must also satisfy the heightened pleading

standards of Rule 9(b)"); *In re Dreier LLP*, 452 B.R. at 428 ("To adequately plead a claim to

recover actual fraudulent transfers under the NYDCL, the complaint must state with particularity

the factual circumstances constituting fraud under Rule 9(b)." (citing *Am. Tissue, Inc. v.

Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 106-07 (S.D.N.Y. 2004))).  That

means in support of Counts 1 and 2, the Trustee must allege "with particularity the circumstances

constituting fraud or mistake," including, at a minimum, the "facts that give rise to a strong

inference of fraudulent intent."  *In re Saba Enters.*, 421 B.R. at 642 (citations omitted); *see also

Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

To satisfy Rule 9(b)'s heightened pleading standards, a complaint must "specify the

property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent

conveyances [and] the consideration paid." *The Official Comm. of Unsecured Creditors of M.

Fabrikant & Sons, Inc. v. JPMorgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394

B.R. 721, 723 (Bankr. S.D.N.Y. 2008).  Moreover, where, like here, "multiple parties are asked

to respond to multiple allegations of fraud, the complaint should inform each defendant of the

nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*,

822 F.2d 1242, 1247 (2d Cir. 1987).

Capstone contends that Counts 1 and 2 must be dismissed because the Trustee (i) has not

plead the existence of any transfer of the Debtor's assets to Capstone, and (ii) has not plead

actual fraudulent intent on the part of Capstone.  Motion at 8-9.  In support of the first argument,

Capstone asserts that the Complaint only references "valuable business arrangements and

opportunities" as being the subject matter of the fraud claim and that reference to such an

"ephemeral 'asset'" does not satisfy the Rule 9(b) pleading requirements.  Motion at 6.  It says

that is so because the Complaint does not identify any particular "business arrangements and

opportunities" that were Level 8's, or state the parties to those arrangements and opportunities,

how valuable they were, or how Level 8 came to own them.  *Id.*  Additionally, Capstone

contends that the Complaint does not allege that specific property was transferred to Capstone, or

how and when it was transferred to Capstone.  *Id*. at 6-7.[17]   It asserts that despite relying on the

contention that the Sale Representative Agreement is the "genesis" of the alleged fraudulent

transfer, the Trustee fails to cite to any specific language in the agreement in support of that

argument, or cite to where the "obligations incurred" are "specifically described" in the

agreement, or cite to what "express provisions in the [Sales Representative Agreement] describe

the alleged transfer of assets from the Debtor to Capstone.  Reply at 4.

  The Trustee counters that the allegations in the Complaint adequately identify the assets

transferred under the Sales Representative Agreement because "[t]he allegation of 'all assets'

means just that.  Everything of value that the debtor had other than its workforce."

*See* Opposition at 13.  The Trustee's theory underlying Counts 1 and 2 is that in entering into the

Sale Representative Agreement, Sam Kim and Mrs. Kim turned the Debtor into a shell company

with no assets and unlimited liabilities.  Opposition at 12.  She says they did so because the

agreement placed all of the assets of the Debtor's business, both tangible and intangible, with

Capstone, including control over all rights in and to the receivables from the Debtor's customers

that were produced by the Debtor's efforts, and saddled the Debtor with every obligation of a

---

[17]    To that end, Capstone notes that the executory contracts listed in the Debtor's schedules do not appear to
include the Sales Representative Agreement and that in its Statement of Financial Affairs, the Debtor did not
identify any transfers to Capstone during the ninety-day, one year or two year periods prior to the Petition Date.  *Id*.
at 7.

seller in producing the receivables. *Id.* Without citing to specific provisions in the agreement,

she asserts that Capstone's argument ignores express provisions of the Sales Representative

Agreement, which she says provides for Capstone's assumption of all customer contracts,

including dealer agreements and subcontracts with Costco, trademarks and receivables. *See id.*

at 13. She maintains that in view of the lengthy Sales Process, the assets that were allegedly

transferred to Capstone under the Sales Representative Agreement would also include "work in

progress" for services performed by the Debtor that had not yet ripened into an invoiced sale. *Id.*

She further says that the obligations that the Debtors incurred under the Sales Representative

Agreement are also specifically described in the agreement. *See id.* Thus, according to the

Trustee, because Capstone has access to the agreement, her general allegations regarding the

scope of the Sales Representative Agreement are specific enough for Capstone to respond to her

assertion that that the agreement transferred Capstone "all assets" of the Debtor. *Id.* at 13-14

(asserting that "all of the allegations regarding what is encompassed by the [Sales Representative

Agreement] is specific enough for a response by Capstone, particularly since the entire written

agreement and what it provides is annexed as an Exhibit '3' to the Complaint.").

The Trustee's reference to the intentional fraudulent transfer of "all assets" of the Debtors

does not comport with Rule 9(b)'s mandate that allegations of fraud be pled with particularity

because it does not give Capstone "sufficient notice of the time, place, and content of the alleged

fraud." *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 36

(S.D.N.Y. 2002) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir.

1994)); *cf. Koch v. Dwyer*, No. 98 CIV 5519 RPP, 2000 WL 1458803, at *3 (S.D.N.Y. Sept. 29,

2000) (noting that the specificity under Rule 9(b) is required to "(1) afford defendant fair notice

of the plaintiff's claim and the factual ground upon which it is based; (2) [t]o safeguard [ ]

24

defendant's reputation and goodwill from improvident charges of wrongdoing; and (3) to inhibit

the institution of strike suits." (internal quotation marks and citations omitted)).  The Trustee

must allege facts demonstrating that the assets that the Debtor allegedly transferred to Capstone

constitute "an interest of the debtor in property" under section 548 of the Bankruptcy Code or are

"things" that have value for purposes of section 276 of the NYDCL.  Without specifying the

particular "assets" and "business opportunities" that the Debtor allegedly transferred to Capstone

under the agreement, the Trustee denies Capstone an opportunity to assess how and whether such

alleged transfers satisfy the elements of the alleged fraudulent transfer and to assert a defense to

the claim.  In this case, it is simply not enough for the Trustee merely to point to the agreement

as the evidence demonstrating the fraudulent transfer.  *See Smith v. Nicholas/Earth Printing,*

*L.L.C. (In re Bob Nicholas Enters.)*, 358 B.R. 693, 701-02 (S.D. Tex. 2007) (court found that the

"business opportunities" and "prospective work" that the chapter 7 trustee alleged were

fraudulently transferred by the debtor did not constitute a property interest for purposes of

section 548 of the Bankruptcy Code because they were too abstract and the trustee had not

shown that the debtor had concrete contracts with customers).  The Trustee's assertion to the

contrary is inconsistent with the scores of intentional fraudulent transfer cases where plaintiffs

and trustees have consistently identified the particular assets for which they seek avoidance and

recovery.  *See, e.g.*, *In re Michel*, 572 B.R. at 479 (discussing the trustee's claim to avoid and

recover tuition payments made by the debtor in the amount of $69,240 as intentional fraudulent

transfers under section 276 of the NYDCL); *Fly Shoes s.r.l. v. Bettye Muller Designs Inc.*,

No. 14 Civ. 10078, 2015 WL 4092392, at *1 (S.D.N.Y. July 6, 2015) (claiming that the "transfer

of the Bettye Muller trademark to N.Y. Transit was a fraudulent conveyance under New York

law"); *In re Flutie*, 310 B.R. at 51-56 (concluding, where debtor was a model management

company, that transfers of its model contracts and services agreements for models it represented

were fraudulent transfers under section 548 of the Bankruptcy Code and sections 273-276 of the

NYDCL).

As noted, Capstone also asserts that the Court should dismiss the Complaint because the

Trustee has failed to plead facts demonstrating that in entering into the Sales Representative

Agreement, the Debtor and Capstone acted with actual intent to defraud the Debtor's creditors.

*See* Reply at 5-6.  The Trustee disputes that contention.  In doing so, she maintains that any

requirement to set forth with particularity the circumstances constituting fraud in the Complaint

has been more than satisfied by the allegations in the Complaint focusing on the badges of fraud

enumerated in *In re Kaiser*, 722 F.2d at 1582-83.  Opposition at 17.  Specifically, she cites to the

following as evidencing "badges of fraud" alleged in the Complaint:

> The Debtor was created by Sam Kim to misappropriate the assets of Stuart's and
> avoid payment of any of Stuart's profits to Wayne Galvin.

> Mr. & Mrs. Kim entered into the [Sales Representative Agreement] with Capstone
> and transferred virtually all of its attachable assets to Capstone when it was sued by
> Stuart's and Weihai.

> Sam Kim and other officers of the Debtor formed On Five for the express purpose
> of misappropriating all of the Debtor's assets, Customers and business and
> transferring them to On Five for their own benefit.

> At its inception, On Five was capitalized with $580,000.00 of the Debtor's funds.

> After On Five was formed Level 8's work force went to work for On Five from the
> same offices as Level 8. The Debtor paid its workforce from the Debtor's funds
> while they were secretly working for On Five to misappropriate the Debtors assets,
> Customers and business.

> The Debtor kept all of the foregoing matters a secret and misrepresented the facts
> surrounding its financial condition to the Court and creditors when it commenced
> the case and during the Chapter 11 proceedings.

26

> When the case was converted, Sam Kim, assisted by other Individual Defendants, formed Liaison Apparel which immediately took over the business with Costco's Kirkland Signature brand of apparel.

Opposition at 18-19.  She says that "[i]n short, the entire history of the actions taken by Sam Kim and the rest of the Individual Defendants, as alleged in the Complaint, shows a continuous, fraudulent plan and scheme to steal the Debtor's assts [sic], customers and business."  *Id.* at 19. That may or may not be so.  However, it does nothing to demonstrate that in entering into the Sales Representative Agreement, Capstone acted with an actual intent to defraud.  The Trustee has failed to meet her burden of pleading facts supporting her contention that Capstone acted with actual intent to defraud the Debtor and its creditors.

"In order to survive a motion to dismiss, plaintiffs' amended complaint must, at a minimum, assert the elements of the violations alleged."  *Grossman v. Citrus Assocs. of New York Cotton Exch., Inc.*, 706 F. Supp. 221, 231 (S.D.N.Y. 1989); *see also Colman v. Vasquez*, 142 F. Supp. 2d 226, 237 (D. Conn. 2001) ("To avoid Rule 12(b)(6) dismissal, plaintiffs must advance factual allegations sufficient to support both elements [of their claim]." (citing *Farmer v. Brennan*, 511 U.S. 825, 846 (1994))).  For the reasons discussed above, the Trustee has failed to adequately allege with particularity the specific property transferred to Capstone, or obligations incurred, by the Sales Representative Agreement—an essential element necessary to state a claim for the avoidance and recovery of intentionally fraudulent transfers under sections 544, 548 and 550 of the Bankruptcy Code, and sections 276 and 278 of the NYDCL.  Moreover, she has failed to allege with particularity facts demonstrating that Capstone entered into the Sales Representative Agreement with the actual intent to defraud the Debtor.  Accordingly, for those reasons, the Court dismisses Counts 1 and 2 of the Complaint.  *See, e.g.*, *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 393 (Bankr. S.D.N.Y. 2011) ("As all the elements of a

27

cause of action must be sufficiently pled to survive a 12(b)(6) motion, the claims under section

544(b) and New York Debtor & Creditor Law §§ 273–75 are dismissed."); *Morse/Diesel, Inc. v.*

*Fid. & Deposit Co. of Md.*, 715 F. Supp. 578, 585 n.4 (S.D.N.Y. 1989) ("As indicated *supra*, the

basic substantive elements of a New York misrepresentation claim are not sufficiently alleged,

and Count III will accordingly be dismissed under Fed. R. Civ. P. 12(b)(6).").  As noted

previously, the Court grants the Trustee leave to replead her allegations against Capstone.

## Count 3 – Avoidance and Recovery of Preferential Transfers and Illegal Post-Petition Transfers and Conversion of Assets

In support of Count 3 of the Complaint, the Trustee asserts that the Sales Representative

Agreement was a mere artifice and guise to transfer title to the Debtor's assets as security for the

Debtor's performance under those agreements and created only a security interest held by

Capstone in the Debtor's assets.  *Id.* ¶ 94.  She says that Capstone failed to file necessary UCC

financing statements to continue perfection of its security interests in the Debtor's assets, and on

the Petition Date, Capstone held only an unperfected security interest in the Debtor's assets.  *Id.*

¶ 94.  She maintains that, as a consequence of Capstone's inaction, any putative security interest

held by Capstone in the Debtor's assets should be avoided under the New York Uniform

Commercial Code and section 544 of the Bankruptcy Code.  *Id.* ¶ 96.  In that context, the Trustee

asserts that any and all transfers made by or on behalf of the Debtor to Capstone within 90 days

of the Petition Date on account of Capstone's unsecured claim when the Debtor was insolvent,

are avoidable preferential transfers under section 547 of the Bankruptcy Code, that are

recoverable by the Trustee under section 550 of the Bankruptcy Code.  *Id.* ¶ 97.  She also

contends that any and all post-petition transfers made by or on behalf of the Debtor to Capstone

on account of its unsecured claim should be avoided and recovered by the Trustee pursuant to

28

sections 362, 549 and 550 of the Bankruptcy Code in an amount to be determined at trial.  *Id.*

¶ 98.[18]

As relevant herein, section 549 of the Bankruptcy Code provides that a trustee may avoid

a transfer of property of the estate: (i) that occurs after the commencement of the case; and

(ii) that is not authorized under title 11 or by the Court.  11 U.S.C. § 549(a).  Pursuant to section

547(b) of the Bankruptcy Code, a trustee may avoid any transfer of an interest of the debtor in

property:

(1)     to or for the benefit of a creditor;
(2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3)     made while the debtor was insolvent;
(4)     made—
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time for such transfer was an insider; and
(5)     that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b); *see also Savage & Assocs., P.C. v. Cty. Of Fairfax, VA (In re Teligent Servs.,*

*Inc.)*, No. 06 Civ. 03721, 2009 WL 2152320, at *3 (S.D.N.Y. July 17, 2009) ("Pursuant to

§ 547(b), a trustee may avoid and recover 'any transfer of an interest of the debtor in property'

made (1) to a creditor; (2) on account of an antecedent debt owed by the debtor before the

transfer was made; (3) while the debtor was insolvent; (4) within ninety days before the debtor

filed for bankruptcy; and (5) that enabled the creditor to receive more than it would have

---

[18]     In the caption to Count 3, the Trustee describes the Count as including a claim against Capstone for conversion of asserts.  The Count plainly fails to do so—and the Trustee does not contend otherwise.  The Court will consider matters relating to the Trustee's conversion claims against Capstone below in connection with its review of Counts 16 and 17 of the Complaint.

received had the debtor filed for chapter 7 bankruptcy, and the creditor received payment

pursuant to the provisions of chapter 7.").

Capstone asserts that the Court must dismiss it from Count 3 of the Complaint.  First, it

contends that it did not receive preferential transfers from the Debtor, and that the Trustee has

not alleged the required elements of any such transfers.  *See* Motion at 11.  Specifically,

Capstone asserts that under the agreement, it held title to the accounts receivables, and other than

the vague claims of "valuable business opportunities and arrangements," the Trustee has not

identified any property of Level 8 that allegedly was transferred to Capstone, or when during the

applicable period such transfers occurred.  *Id.* at 11-12.  Second, Capstone asserts that there were

no post-petition transfers of property from Level 8 to Capstone, let alone illegal ones.  *Id.* at 13.

It maintains that in the eighteen months that the Debtor was a debtor-in-possession, it filed

operating reports (collectively, the "Operating Reports") and none of those reports reflects a

single transfer of assets from the Debtor to Capstone, or the payment of any money by the

Debtor to Capstone.  It contends that to the contrary, the only transfers reported in the Operating

Reports between the Debtor and Capstone are payments made by Capstone to the Debtor.  *Id.*

Capstone also argues that even if the Court declines to consider the Operating Reports for this

Motion to Dismiss, the Complaint itself does not meet the task in alleging a post-petition transfer

from Level 8 to Capstone.  *Id.*

The Trustee says that Capstone's arguments mischaracterize the relief she is seeking in

Count 3.  Opposition at 22.  She explains that she recognizes that on its face, the Sales

Representative Agreement purports to transfer title to all of the Debtor's assets to Capstone,

including the receivables generated exclusively by the Debtor's efforts, and states that paragraph

4(c) of the agreement provides for as much, as follows:

> All customer receivables shall be and remain the sole property of Capstone.  All invoicing shall be done by Capstone which shall provide for direct payment to Capstone in U.S. dollars.  If any payment is directed to or otherwise received by Level 8, Level 8 shall hold such payment in trust for Capstone . . . .

*Id.* at 21.  She notes, however, that in paragraph 4(d), the Debtor "grants Capstone a security interest, and a blanket first priority UCC lien, in and to the assets owned by Level 8, in order to secure Capstone's rights to receive any payment under this agreement."  The Trustee says that the "question immediately raised by subparagraph 4(d) is what are the assets owned by Level 8 that are the subject of the security interest and blanket lien?"  *Id.*  She contends that if Level 8 retained ownership of the work in progress and accounts receivable generated by Level 8's efforts, and the Sales Representative Agreement was only intended to be a security agreement, then any security interest in work in progress, Customer contracts and accounts receivable became unperfected and avoidable.  *Id.*  The Trustee maintains that the "crux" of Count 3 "involves what the Debtor's Customers paid to Capstone, on behalf of the Debtor, on account of receivables owned by the Debtors."  *Id.* at 22.  "Those are the transfers that are the subject of the third claim for relief."  *Id.*

That may be what the Trustee intends, but it is not reflected in the allegations in support of the Complaint.  Moreover, the Trustee has not identified the pre- or post-petition transfers at issue in Count 3.  Finally, she asserts that the other elements of a preference, namely that: (i) the transfers were made to Capstone as a creditor; (ii) on account of an antecedent debt; (iii) while the Debtor was insolvent within ninety days of the Petition Date; and (iv) enabled Capstone to recover more on its unsecured claim than it would receive from the Debtor's Estate in this Chapter 7 Bankruptcy Case, are all obvious and may be inferred from the allegations in the Complaint.  The Court disagrees and grants the Motion with respect to Count 3, with leave to replead.

31

## Count 16 – Action for Fraud and Conversion Against All Defendants

In Count 16 of the Complaint, the Trustee asserts claims of fraud and conversion against all Defendants and seeks damages in an amount equal to the sum of all debts incurred by the Debtors as a joint venture and enterprise conducted by the Defendants and part of a common plan and scheme to fraudulently divert and misappropriate all of the Debtor's assets and/or shield all of those assets from the Debtor's creditors in an amount to be determined at trial. *See* Complaint ¶ 156.[19]  Capstone argues that the Court should dismiss it from Count 16 because the Trustee has not alleged against it any of the elements required for a claim of fraud or a claim of conversion.  *See* Motion at 12-13.  More specifically, as to the fraud claim, Capstone contends that the Trustee does not plead that it made any false representation concerning a material fact to anyone, and as such, her claim for fraud must be dismissed.  *See id.* at 12.  It also asserts that the Trustee has not alleged the elements required for the conversion claim - namely, what property Capstone has allegedly converted, how Capstone exercised dominion or control over such property, and what right the Debtor had to such property or that such right was superior.  *See id.* at 13.

The Trustee says that in Counts 4 through 13 of the Complaint she is seeking relief from the Individual Defendants, On Five, and Liaison Apparel.  In those Counts, she purports to allege damage claims against those parties based on their alleged fraud, conversion, and breach of fiduciary duties arising both before and after the Petition Date.  Opposition at p. 23.  In Count 14, the Trustee seeks to impose a constructive trust on all of the assets of On Five and Liaison Apparel, based on the same misconduct alleged in Counts 4 through 13, and in Count 15 she

---

[19]   As support for the claim she realleges and incorporates the allegations in support of Counts 1, 2, 3, 4, 6, 9, 12, and 13.  *Id.* ¶ 155.

seeks to impose alter ego liability on Sam Kim, On Five, and Liaison Apparel for that alleged

fraudulent and larcenous conduct.  *Id.*  She says that although Capstone is not one of the

Defendants from whom she is seeking relief in Counts 4 through 15, the alleged fraudulent

activities by the Defendants named therein, and the means and methods that the Insider

Defendants allegedly used to achieve their end of stealing the Debtor's assets, is an important

basis for imposing liability on Capstone under Count 16 of the Complaint.  That is because in

support of that count, the Trustee alleges that:

> By its actions before, during and after the Chapter 11 case, Capstone not only
> facilitated the diversions and misappropriations of the Debtor's business and
> business opportunities by On Five and Liaison Apparel, Capstone aided and abetted
> On Five's and Liaison Apparel's diversions and misappropriations for its own
> benefit.

Complaint ¶ 81.  In her Opposition, the Trustee asserts that Capstone misconstrues or

mischaracterizes the allegations against it in support of Count 16.  *See* Opposition at 24.  She

explains that in Count 16, "she is not seeking to recover from Capstone as a primary malefactor

in the fraud and conversion that caused the theft of the Debtor's business, assets and Customers."

*Id.*  Rather, she "seeks to recover from Capstone on a different basis, namely that Capstone aided

and abetted the fraud and conversion perpetrated against the Debtor by the Insider Defendants."

*Id.*  The Court credits that argument and will consider whether the Complaint adequately alleges

that Capstone aided and abetted the alleged fraud and conversion by other Defendants.

Before assessing the adequacy of the pleadings, the Court reviews the allegations in the

Complaint that are germane to the Trustee's allegations of fraud and conversion against On Five

and Liaison Apparel in Count 16 of the Complaint.  In support of the Complaint, the Trustee

asserts that on March 2, 2016, certain officers and directors of the Debtor formed On Five to

conduct the same type of business as the Debtor at the Debtor's offices located at the Debtor's

business address of 250 West 39th Street, Suite 502, New York, New York 10018. Complaint

¶¶ 12, 36. She maintains that from the time On Five was formed, the Defendants who were

officers, directors and managers of the Debtor—with the knowledge and consent of Ms. Kim and

Capstone—engaged in a continuous plan and scheme, both prior to the Filing Date and thereafter

during and after the chapter 11 proceedings, to divert and misappropriate all of the Debtor's

assets and business from the Debtor to On Five and Liaison Apparel. *Id.* ¶ 30. She asserts that

on August 30, 2018 the Officers and Directors of the Debtor and On Five formed the Liaison

Apparel, and that they did so to further their scheme to divert and misappropriate the Debtor's

assets and business. *Id.* ¶ 13.

As to the allegations relating to On Five's and Liaison Apparel's wrongdoing, the Trustee

focuses on the following three groups of events:

> The Trustee asserts that, at the direction of the Debtor's officers, directors and
> managers, Level 8 transferred a total of $580,000.00 from its Chase bank account
> to On Five, and with those funds, Spadero opened bank accounts for On Five at
> Pacific Bank, and transferred some of the funds to Pacific Bank as security for a
> loan to On Five. Complaint ¶¶ 39-41. She says that documents submitted to the
> bank included fraudulent invoices in the amount of $70,000 dated March 2, 2016,
> the date On Five was formed, and in the amount of $500,000 dated April 1, 2016
> falsely claiming money due for "commissions" payable to On Five that were never
> earned and never reported as income on the 2016 federal corporate income tax
> return filed by On Five. *Id.* ¶ 42.

> Next, she contends that after the Debtor's officers and directors formed On Five,
> the Debtor's "essential personnel," while employed by the Debtor, actively pursued
> business opportunities for On Five—or diverted existing or promised business
> opportunities of the Debtor from the Debtor to On Five—all to the prejudice of the
> Debtor. Complaint ¶ 45. She maintains that in doing so, the Debtor's personnel
> allegedly misrepresented to unidentified persons that On Five was Level 8's new
> name, and that On Five had been in business for as long as Level 8. *Id.* She also
> contends that both before and after the Petition Date, and solely through the efforts
> of the Debtor's officers and employees (since On Five had no employees of its
> own), those individuals caused purchase orders that should have been written in the
> Debtor's name, to be issued on behalf of On Five and that On Five received
> payments totaling approximately $2 million on account of those purchase orders.
> *Id.* ¶¶ 46-52.

34

Finally, she asserts that after the Conversion Date, (i) On Five and Liaison Apparel assumed the Debtor's payroll, (ii) the Defendants continued to conduct business with Capstone, Costco and other former customers of the Debtor, in the name of On Five and Liaison Apparel, (iii) on August 28, 2018, On Five applied for and obtained financing from Capstone on a conventional factoring basis, and (iv) between September 28, 2018 and July 2019 Capstone made payments totaling $1,885,941.72 to On Five under conventional factoring arrangements, including $979,264.57 associated with sales to Costco Mexico the Debtor improperly diverted to On Five prior to the Conversion Date.    Complaint ¶¶ 76-79.    She maintains that the Defendants attempted to hide their involvement in the alleged wrongful conduct in taking over the Debtor's business and business opportunities by simply incorporating Liaison Apparel Corporation and changing the name under which business was conducted with Costco.    *Id.* ¶ 80.

Below, the Court considers the adequacy of the Trustee's pleadings.

<u>Aiding and Abetting Liability</u>

To state an aiding and abetting claim, a plaintiff must plead "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer."    *Chemtex, LLC v. St. Anthony Enterprises, Inc.* 490 F.Supp.2d 536, 546 (S.D.N.Y. 2007).    Accordingly, the elements of an aiding-and-abetting-fraud claim brought under New York law are: (1) an underlying fraud; (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial assistance to the fraud.    *Silvercreek Management, Inc. v. Citigroup, Inc*., 346 F. Supp. 3d 473, 482 (S.D.N.Y. 2018) (citing *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014)); *see also Oster v. Kirschner*, 77 A.D.3d 51, 55, 905 N.Y.S.2d 69, 72 (2010) ("A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance.").    Similarly, "[a]iding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance."    *William Doyle Galleries, Inc. v. Stettner*, 167 A.D.3d 501, 505, 91 N.Y.S.3d 13, 18 (2018); *see also Calcutti v. SBU, Inc*., 273 F. Supp. 2d 488, 493 (S.D.N.Y. 2003) ("In order to

35

state a claim . . . for aiding and abetting the alleged common law conversion [the plaintiff] . . .

must allege: (1) the existence of a primary violation; (2) knowledge of this violation on the part

of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement

of the primary violation.") (citations omitted).

<u>Aiding and Abetting Fraud</u>

Under New York law, the elements of a claim for common law fraud are: "(1) a

misrepresentation, (2) fraudulent intent, or scienter, (3) intent to induce reliance, (4) justifiable

reliance and (5) damage." *Sharmat v. Gallen (In re Gallen)*, 559 B.R. 349, 356–57 (Bankr.

S.D.N.Y. 2016) (citing *Taub v. Morris (In re Morris)*, 252 B.R. 41, 48 (Bankr. S.D.N.Y. 2000));

*see also Morrow v. MetLife Inv'rs Ins. Co.*, 177 A.D.3d 1288, 1289, 113 N.Y.S.3d 421, 423

(2019) ("The elements of a cause of action for fraud require a material misrepresentation of fact,

knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and

damages."). "[C]ommon law fraud claims are subject to the Rule 9(b) pleading requirements."

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312

(S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies

L.L.C.*, 829 F.3d 173 (2d Cir. 2016); *see also In re Agape Litigation*, 773 F. Supp. 298, 307

(E.D.N.Y. 2011) (allegations of aider-abettor liability must meet the requirements of Rule 9(b)).    !

In substance, in the Complaint, the Trustee asserts that the Individual Defendants

launched a scheme to defraud the Debtor and its creditors and that, while on the Debtor's payroll

the Debtor's employees: (i) caused the Debtor to transfer $580,000 of the Debtor's funds to On

Five – for no consideration and based upon fraudulent invoices; (ii) misrepresented to

unidentified persons that On Five was Level 8's new name, and that On Five had been in

business for as long as Level 8; and (iii) issued purchase orders on behalf of On Five, that should

36

have been written in the Debtor's name, totaling approximately $2 million.  The Trustee also

contends that the incorporation of Liaison Apparel furthered the allegedly fraudulent scheme.

However, that alleged "scheme to defraud" that is the centerpiece of the Complaint, does not

support the Trustee's allegations of common law fraud against On Five and Liaison Apparel.

That is because, as is clear from the above summary of the allegations in the Complaint relating

to On Five and Liaison Apparel (and from those allegations), the Trustee does not allege any

misrepresentations of fact by On Five or Liaison Apparel to the Debtor, let alone falsity, scienter

or reliance.  *See In re Sattler's Inc*., 780, 789 (Bankr. S.D.N.Y. 1987) ("The Amended Complaint

paints a picture of misappropriation through cash transfers facilitated by Shipson and the

Principals.  But allegations of misdoings, regardless of their detail, do not necessarily give rise to

an action for fraud and deceit.  And here, clearly, they do not, for the Trustee has failed to allege

any misrepresentation of material fact, let alone falsity, scienter or reliance."); *In re Centennial

Textiles, Inc*., 227 B.R. 606, 611 (Bankr. S.D.N.Y. 1998) ("Proof of a scheme to receive

unauthorized postpetition transfers does not necessarily give rise to an action for fraud. . . . Here,

the trustee mistakenly equates common law fraud with the more generic and amorphous 'scheme

to defraud.'").  Accordingly, the Trustee fails to state a claim against Capstone for aiding and

abetting fraud, because she has failed to plead an underlying fraud on behalf of On Five or

Liaison Apparel.  *See Silvercreek*, 346 F. Supp. 3d at 482 (requiring plaintiffs to allege "an

underlying fraud"); *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 396

(S.D.N.Y. 2010) (finding that plaintiffs failed to adequately plead underlying fraud claim and

any underlying claim for conversion was barred by the statute of limitations, and therefore the

associated aiding and abetting claims must be dismissed); *In re Trilegiant Corp., Inc.*,

11 F. Supp. 3d 132, 140 (D. Conn. 2014) (finding that plaintiff failed to allege primary RICO

violation, and therefore claim for aiding and abetting must fail).

Count 16 also fails to state a claim that Capstone aided and abetted On Five's and Liaison

Apparel's alleged fraud because the Trustee has not adequately alleged that Capstone had "actual

knowledge" of that fraud.  *See Silvercreek*, 346 F. Supp. 3d at 482.  In the Complaint, the Trustee

alleges that "[f]rom the time [On Five] was formed in 2016, the Defendants who were officers,

directors and managers of the Debtor, with the knowledge and consent of the Defendants

Ms. Kim and Capstone, engaged in a continuous plan and scheme, both prior to the Filing Date

and thereafter during and after the Chapter 11 proceedings, to divert and misappropriate all of the

Debtor's assets and business from the Debtor to On Five and Liaison Apparel . . . ."  Complaint

¶ 38.  Although not alleged in the Complaint, in her Opposition, the Trustee maintains that

"Capstone must have known of the [fraudulent] activities because of its own dealings with the

same small workforce for On Five and the Debtor, and its knowledge of the lengthy Sales

Process that made origination and consummation of sales to Customers impossible by any

start-up company such as On Five or Liaison Apparel."  Opposition at pp. 25-26.  Even with

such an allegation,[20] the Trustee would not sufficiently allege Capstone's actual knowledge of

the fraudulent activities so as to satisfy New York state law and Rule 9(b).

---

[20]    The Trustee cannot use her Opposition to the Motion to amend her Complaint.  *See Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 609 (S.D.N.Y. 2015) ("A plaintiff cannot amend his complaint in response to a motion to dismiss."), *opinion reinstated on reconsideration*, No. 14 CIV. 4390 JGK, 2015 WL 6509112 (S.D.N.Y. Oct. 28, 2015); *Santana v. City of New York*, No. 15 CIV. 6715 (ER), 2018 WL 1633563, at *4 (S.D.N.Y. Mar. 29, 2018) ("Plaintiff cannot amend his Complaint to add additional causes of actions in his opposition papers."); *see also Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) ("To the extent Mathie raised a new constitutional challenge in his submissions in opposition to defendants-appellees' motion to dismiss that the procedures used during his disciplinary hearing denied him the right to call witnesses and submit scientific documentary evidence in his own defense, we also agree with the Magistrate Judge that the amended complaint did not encompass that claim.").

"New York common law, which controls the analysis here, has not adopted a constructive knowledge standard for imposing aiding and abetting liability.  Rather, New York courts and federal courts in this district, have required actual knowledge."  *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) (collecting authorities); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citing cases, including *Kolbeck*, and finding that "actual knowledge is required to impose liability on an aider and abettor under New York law").  Conclusory allegations of knowledge, or allegations that a party suspected fraud, in support of a claim for aiding and abetting fraud, are not sufficient to allege actual knowledge with the particularity required under Rule 9(b).  *See id.* at 293 ("Although the plaintiffs conclusorily allege that the banks had actual knowledge, we think that they failed to plead facts with the requisite particularity to support that claim.") (citations omitted).[21]  Mere inaction does not amount to "substantial assistance" for purposes of fixing aiding and abettor liability, unless the defendant has an independent duty to the plaintiff to act or disclose information.  *Calcutti*, 273 F. Supp. 2d at 494 ("It is well settled that without an independent duty to disclose, mere inaction does not amount to substantial assistance for purposes of determining aider and abettor liability.")  This is consistent with the requirement of actual knowledge, as "[t]o hold all defendants to a standard of constructive knowledge and subject to a duty of inquiry would mean that all defendants, regardless of their independent obligations to plaintiff, could be liable for inaction."  *Kolbeck*, 939 F. Supp. at 247.  A strong inference of fraud, as required by Rule 9(b), "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts

---

[21]    In *Lerner*, the plaintiffs alleged that certain banks were aiding and abetting a fraudulent Ponzi scheme.  *Id.* at 278-79.  Although the plaintiffs alleged "in detail that the banks knew that [a defendant] engaged in improper conduct," such allegations were not sufficient to show "actual knowledge of his outright looting of client funds."  *Id.* at 293.

that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Agape Litig.*, 773 F. Supp. 2d at 308.

At most, the Trustee has made conclusory statements regarding Capstone's knowledge of the alleged scheme to defraud, or argued that Capstone must have known about the Defendants' fraudulent activities "due to their own dealings with the same small workforce" and "its knowledge of the length Sales Process that made origination and consummation of sales to Customers impossible by any start-up company." *See* Complaint ¶ 38; Opposition at 25-26. Without more, those statements are insufficient to support the Trustee's contention that Capstone aided and abetted On Five's and Liaison Apparel's alleged fraud. *See Lerner*, 459 F.3d at 293 (noting that allegations that a party "suspected fraudulent activity" were not sufficient to "raise an inference of actual knowledge"). Without a specific allegation that Capstone had knowledge of the alleged fraud, the Trustee cannot show that Capstone had the "motive and opportunity to commit fraud" or that there was "strong circumstantial evidence of conscious misbehavior or recklessness." *In re Agape Litig.*, 773 F. Supp. 2d at 308 (noting that the "actual knowledge element of a claim for aiding and abetting is a distinct requirement from the scienter required to allege the underlying fraud"). Although the Trustee alleges that Capstone should have known about the fraud due to the overlap of employees between On Five and the Debtor, this fact alone does not show that Capstone knew of any fraudulent activity—the Trustee does not allege that the overlap itself was fraudulent. Likewise, there is no basis to conclude that Capstone should have known about the alleged fraudulent activity solely due to the length of the sales process, as this is likewise a conclusory allegation that Capstone should have suspected fraud, rather than an allegation of Capstone's actual knowledge. *See Lerner*, 459 F.3d at 293. As with the allegations of employee overlap, the Trustee does not appear to be alleging that the length of the sales

40

process itself was fraudulent, and no facts are pled showing that the length of the sales process is

evidence of Capstone's knowledge of the Defendants' fraudulent intent.[22]  Therefore, the Court

finds that the Trustee has failed to state a claim that Capstone "aided and abetted" the alleged

fraud of On Five and Liaison Apparel.  Accordingly, and to that extent, the Court dismisses

Capstone from Count 16 of the Complaint, with leave to replead.

> ### Aiding and Abetting Conversion

In New York, conversion "is the unauthorized 'exercise of dominion over or interference

with' a specific identifiable piece of property in defiance of the owner's rights."  *Petty v. Barnes*,

70 A.D.3d 661, 662, 894 N.Y.S.2d 85, 87 (2010); *see also LoPresti v. Terwilliger*, 126 F.3d 34,

41 (2d Cir. 1997) ("Conversion occurs when a defendant exercises unauthorized dominion over

personal property in interference with a plaintiff's legal title or superior right of possession."

(citing *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996)));

*Luroros v. Cyr*, 175 S. Supp. 2d 497, 515 (S.D.N.Y. 2001) (explaining that conversion "is the

unauthorized exercise of dominion or control over property by one who is not the owner of the

property which interferes with and is in defiance of a superior possessory right of another in the

property" (citation omitted)).  To state a claim for conversion, a plaintiff must plead, that: (1) the

property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership,

possession or control over the property before its conversion; and (3) defendant exercised an

unauthorized dominion over the thing in question, to the alteration of its condition or to the

exclusion of the plaintiff's rights.  *See Kirschner v. Bennett*, 648 F.Supp.2d 525, 540 (S.D.N.Y.

---

[22]   At most, the Trustee alleges that "Capstone lacked the expertise to conceive and design seasonal lines of
garments, to create samples, to procure orders for garments by store buyers, to arrange and oversee manufacturing of
garments by companies in China and Vietnam, and to arrange for timely production and shipment of goods to
customers that were all part of the lengthy Sales Process, and therefore could not succeed as a 'seller' of goods
without Level 8."  Complaint ¶ 34.  Far from showing that the length of the sales process should put Capstone on
notice that fraud was afoot, the facts alleged by the Trustee appear to show that Capstone lacked knowledge and
expertise regarding the sales process in general.

2009) (quotation marks and citation omitted); *see also Channel Marine Sales, Inc. v. City of New York*, 75 A.D.3d 600, 601, 903 N.Y.S.2d 922, 923 (2010) (explaining that to establish a cause of action to recover damages for conversion, a plaintiff "must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion . . . to the exclusion of the plaintiff's rights" (quoting *Messiah's Covenant Cmty. Church v. Weinbaum*, 74 A.D.3d 916, 919, 905 N.Y.S.2d 209, 212 (2010))).

As noted above, the Trustee claims that Capstone aided and abetted On Five's and Liaison Apparel's alleged conversion of the Debtor's assets. However, in the Complaint, the Trustee does not allege any identifiable property that Liaison Apparel allegedly converted.[23] Accordingly, the Trustee has failed to state a claim for conversion against Liaison Apparel and, as such, it has failed to state a claim for relief against Capstone for aiding and abetting Liaison Apparel's conversion of the Debtor's property. *See Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d at 396 (finding that the underlying claim for conversion was barred by statute of limitations, and therefore the associated aiding and abetting claim must be dismissed); *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, No. 15-CV-60653, 2015 WL 12862724, at *6 (S.D. Fla. Aug. 20, 2015) (dismissing an aiding and abetting claim on the grounds that plaintiff failed to allege the underlying conversion claim); *In re Musicland Holding Corp.*, 386 B.R. 428, 441 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x 36 (2d Cir. 2009) (same).

---

[23]   As relevant, in the Complaint the Trustee alleges that "[e]ven after the Bankruptcy Case was converted, the Defendants continued to conduct business with Capstone, Costco and other former customers of the Debtor, in the name of On Five and Liaison Apparel." Complaint ¶ 77. She also asserts that after the Conversion Date, "[t]he Defendants then hid their involvement in the wrongful conduct in taking over the Debtor's business and business opportunities by simply incorporating Liaison Apparel Corporation and changing the name under which business was conducted with Costco." *Id.* ¶ 80. Even if true, those allegations fail to support a claim that Liaison Apparel converted the Debtor's assets.

42

In contrast, the Trustee has stated a claim for conversion against On Five. "Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner." *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617, 619 (2004) (citation omitted), *abrogated on other grounds by Tzolis v. Wolff*, 10 N.Y.3d 100, 884 N.E.2d 1005 (2008). "The conversion claim must be for recovery of a particular and definite sum of money, although the specific bills are not identified." *ADP Investor Commun. Servs. v. In House Atty. Servs.,* 390 F.Supp.2d 212, 224 (E.D.N.Y. 2005). Under New York law, a demand and refusal are necessary to make out a claim for conversion only where the property is held lawfully by the defendant. *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) ("If possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property . . . ." (citing *White v. City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369, 370 (1995))). However, "where the defendant holds the property unlawfully—where, for example, he stole the property—'no demand and refusal are necessary to render the defendant liable.'" *Id.* (quoting *Nat Koslow, Inc. v. Bletterman*, 23 Misc. 2d 340, 343, 197 N.Y.S.2d 583, 586 (Sup. Ct. 1960).

In the Complaint, the Trustee has pled facts demonstrating that certain Defendants, including Capstone, paid On Five millions of dollars of specifically identifiable funds that were properly payable to the Debtor, for no consideration and without the Debtor's consent or approval, and that On Five used those funds for its own purposes. Specifically, the Trustee alleges that:

(i) During March and April 2016, certain of the Debtor's officers, directors, and managers transferred funds aggregating $580,000 from the Debtor to On Five for

43

no consideration, which On Five deposited in its account at Pacific Bank and thereafter used for its own purposes.  Complaint ¶¶ 39 - 42.[24]

(ii) Capstone paid On Five $74,396.22 "for the express purpose of funding the Debtor's November 2016 payroll obligation, without notice to or approval of the Court, for employees who were also secretly working for On Five."  *Id.* ¶ 58.

(iii) In the period of November 16, 2016 through July 16, 2019, Capstone made payments to On Five of funds due and owing to the Debtor, totaling approximately $1,875,000.  *Id.* ¶ 60.

(iv)   Capstone made payments of $1,885,941.72 to On Five under conventional factoring arrangements, including $979,264.57 associated with sales to Costco Mexico improperly diverted from the Debtor to On Five, prior to the Conversion Date.  *Id.* ¶ 79.

The Trustee does not allege that she demanded On Five to return the funds, but she is not required to do so.  In the Complaint, the Trustee demonstrates that although On Five had no employees, Spadero, who on at least one occasion allegedly identified himself as President, Secretary, and 100% shareholder of On Five, and others acting on behalf of On Five, caused those funds to be transferred to On Five either directly or by redirecting invoices payable to the Debtor to On Five.  *See id.* ¶ 42.  The Complaint plainly alleges that On Five obtained the funds unlawfully.  *See Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F. 3d at 50. The Court finds that the Trustee has alleged a claim for conversion against On Five.  *See In re Musicland Holding, Corp.,* 386 B.R. at 440 (finding a valid conversion claim could be stated if "the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession"); *ADP Inv'r Commc'n Servs., Inc. v. In House Attorney Servs.,*

---

[24]    The Trustee alleges that:

The documents executed by the Defendant Spadaro on June 6, 2016 for the loan from Pacific Bank identified Spadaro as the President, Secretary and 100% shareholder of On Five, and also included fraudulent invoices from On Five to the Debtor in the amount of $70,000 dated March 2, 2016, the date On Five was formed, and in the amount of $500,000 dated April 1, 2016 falsely claiming money due for "commissions" that were never earned and never reported as income on the 2016 federal corporate income tax return filed by On Five.

Complaint ¶ 42.

*Inc.*, 390 F. Supp. 2d at 225 (finding complaint adequately pled conversion, in part, as it alleged an identifiable sum of money that was sent to defendant's bank account).

As with the fraud claim, to state a claim of aiding and abetting conversion, the Trustee must allege facts demonstrating that Capstone had "actual knowledge of the underlying harm," i.e., the alleged conversion. *Kirschner v. Bennett*, 648 F. Supp. 2d at 544; *see also In re BC Funding, LLC*, 519 B.R. 394, 431 (Bankr. E.D.N.Y. 2014) (noting that in support of a claim of aiding and abetting conversion, "[t]he Defendants correctly point out that the Plaintiff must plead the defendants' 'actual knowledge' [of the alleged conversion]").  Actual knowledge can be "discerned from surrounding circumstances." *Id.* at 431 (finding that parties had actual knowledge of conversion when: (i) certain parties were allegedly hired to provide capital raising services even though they had no experience, and subsequently did not render any such services, and (ii) another party received over $1 million in funds with no explanation, relevant documents, or invoices to describe what work she was accomplishing).  However, such circumstances must give rise to a "'strong inference' of the defendant's actual knowledge of the underlying harm, or the conscious avoidance of the same such that 'it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Kirschner*, 648 F. Supp. 2d at 544. Further, the fact that a defendant has knowledge of certain parts of a debtor's overall scheme or objectives is not sufficient if the plaintiff cannot show that the defendant had actual knowledge of the conversion in question.  *See id.* (finding allegations of a defendant's knowledge of the debtor's scheme to hide financial problems was insufficient, when the underlying claims of fraud and conversion alleged injuries to the debtor's customers, and the defendant only had actual knowledge of conduct that potentially harmed shareholders).

The Trustee has failed to provide more than conclusory allegations regarding Capstone's knowledge of the alleged conversion of assets by On Five.  For all the same reasons outlined above in discussing the Trustee's fraud allegations, stating that Capstone "must have known" about the alleged conversion "due to their own dealings with the same small workforce" and "its knowledge of the lengthy Sales Process that made origination and consummation of sales to Customers impossible by any start-up company" is insufficient.  *See* Complaint ¶ 38; Opposition at 25-26; *Kirschner*, 648 F. Supp. 2d at 544 (stating that plaintiff must allege "actual knowledge").  The Trustee does not allege that the employee overlap or the length of the sales process themselves are evidence of the Defendant's alleged conversions, but rather appears to be arguing that such facts should have put Capstone on notice that On Five was taking the Debtor's assets.  To the extent that such facts are even relevant to the allegations of conversion, the Court finds that they do not meet the requirement that such facts give rise to a "'strong inference' of the defendant's actual knowledge of the underlying harm, or the conscious avoidance of the same." *See Kirschner*, 648 F. Supp. 2d at 544.  Therefore, the Court dismisses Count 16 as to Capstone's alleged liability for aiding and abetting conversion, with leave to replead.

**Count 17 – Avoidance and Recovery of Fraudulent Transfers, Illegal Post-Petition Transfers, and Conversion Against Capstone and Others**

In Count 17 of the Complaint, the Trustee seeks recoveries from Capstone, among others, for alleged fraudulent transfers, illegal post-petition transfers, and conversion.  In support of this claim, she asserts that during the chapter 11 case and following the conversion of the chapter 11 case to one under chapter 7, up to the present time, the Debtor had a possessory right and interest to its property, including but not limited to, cash, accounts receivables, licenses, other contract rights, interests and intellectual property, and rights to payment under agreements with the Debtor's customers and with Capstone, including, but not limited to, the payments identified in

46

Exhibit 4 to the Complaint and paragraphs 46-52 & 60 therein (collectively, the "Debtor Property"), and that the Defendants converted the Debtor Property for their own use and benefit. *See id.* ¶¶ 158-159.  She maintains that Capstone and others continue to use the Debtor Property, and that the Debtor and its creditors have been deprived of the use of that property.  *See id.* ¶¶ 160-161.  She says that, as a result of this conduct, the Debtor and its creditors have not had the use or benefit of the Debtor Property, and the Debtor is entitled to an award of compensatory damages, special damages and consequential damages, including all compensation received by Capstone under the Sales Representative Agreement, in an amount to be determined at trial.  *Id.* ¶¶ 162-164.

Capstone maintains that for the reasons already discussed in Counts 1-3 and 16 above, in Count 17, the Trustee has failed to plead the required elements for her claims for intentional fraudulent transfers and conversion.  *See* Motion at 13-14; Reply at 9.  Further, it says that the Court must dismiss the Trustee's remaining claim for illegal post-petition transfers in Count 17 because the Debtor made no post-petition transfers to Capstone, let alone illegal transfers. *See* Motion at 13.  As support, Capstone points to the Debtor's filed post-petition Monthly Operating Reports and asserts that they do not show a single transfer of assets from the Debtor to Capstone.  *See id.* at 13.  Capstone maintains that even without resort to the Monthly Operating Reports, the Complaint does not allege any post-petition transfers by the Debtor to Capstone, and the incorporated allegations referenced in Count 17 (*i.e.*, Complaint ¶¶ 46-52, & 60, and Exhibit 4[25]), only identifies Capstone three times—each of which makes allegations about payments made by Capstone to On Five.  *See id.*

---

[25]    Capstone complains that Exhibit 4 does not reference Capstone at all, and is unclear what that document purports to be, what its relevance is, and what evidentiary value it has.  *See* Motion at 13.

In response to the Motion, and as with Count 16 of the Complaint, the Trustee contends that she is seeking to recover from Capstone on the basis that it aided and abetted the fraud and conversion allegedly perpetrated by On Five and Liaison Apparel.  *See* Complaint ¶ 81.  In her Opposition, the Trustee addresses her claims against Capstone in Counts 16 and 17 collectively. The facts alleged in support of Counts 16 and 17 are essentially identical.  As such, in resolving this aspect of the Motion, the Court relies on its assessment of the adequacy of the Trustee's claims in Count 16 that Capstone aided and abetted On Five's and Liaison Apparel's alleged fraud and conversion.  For the reasons discussed in connection with Count 16, the Court dismisses that Trustee's claims in Count 17 that Capstone aided and abetted On Five's and Liaison Apparel's alleged fraud and conversion, with leave to replead.[26]

In her Opposition, the Trustee does not separately argue whether the Complaint properly alleges illegal post-petition transfer liability as to Capstone, and she appears to collapse such allegations with those regarding aiding and abetting conversion of the Debtor's assets.[27] However, as noted by Capstone, to the extent that the Trustee is separately alleging that Capstone aided and abetted the Debtor's illegal post-petition transfers, pursuant to section 549 of the Bankruptcy Code or otherwise, the Complaint does not contain any allegations of a post-petition transfer from the Debtor to Capstone or any other party.  *See* Motion at pp. 13-14. Section 549 of the Bankruptcy Code states that "the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by

---

[26]   In addition, for the same reasons articulated above, the Court dismisses Count 17 as to any of Capstone's aiding and abetting liability with regard to the other Defendants, as the Trustee has either not alleged such liability or, with respect to Liaison Apparel, has not alleged any relevant fraudulent transfer or conversion.

[27]   To the extent the allegations are so collapsed, the Court dismisses Claim 17 as to such alleged transfers for the reasons stated above.

the court."  11 U.S.C. § 549; *see also In re Straightline Investments, Inc.*, 525 F.3d 870, 877 (9th

Cir. 2008) ("If a trustee seeks to recover a postpetition transfer under section 549 . . . the trustee

must show that a transfer occurred after the filing of the bankruptcy petition and that

the transfer was not authorized by either the bankruptcy court or the [Bankruptcy] Code."

(citations omitted)).  Of note, to the extent that the Trustee is seeking to recover under

section 549, some courts have held that such section only applies to transfers made by the debtor.

*See 40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076, 1081 (9th Cir. 2003) (finding,

among other things, that section 549 only applies "when the debtor himself initiates an

unauthorized transfer"); *In re Schwartz*, 954 F.2d 569, 574 (9th Cir. 1992) ("Section 549 exists

as a protection for creditors against unauthorized debtor transfers of estate property.").  Here, the

Trustee has not asserted any post-petition transfers by the Debtor to any other party.  However,

even if the Trustee could successfully allege an illegal post-petition transfer, Capstone cannot be

liable for aiding and abetting such transfer unless the Trustee can show that Capstone had

knowledge of the alleged illegal transfer.  *See Calcutti*, 273 F. Supp. 2d at 493 (listing the

elements of an aiding and abetting claim).  For all the same reasons articulated in this Court's

analysis of Count 16 above with regarding to the alleged conversion of the Debtor's assets, the

Trustee has failed to allege facts sufficient to show Capstone's knowledge of an illegal

post-petition transfer of the Debtor.  As a consequence, the Court dismisses Count 17 as to

Capstone's liability for aiding and abetting an illegal post-petition transfer, with leave to replead.

## Count 18- Unjust Enrichment Against All Defendants

In Count 18 of the Complaint, the Trustee seeks the entry of a judgment against all

Defendants in an amount equal to the value of the Debtor Property and/or transfers, with an

award of prejudgment interest and costs.  Complaint ¶ 171.  In support of Count 18, she alleges

that the Debtor conferred a benefit upon each of the Defendants when the Debtor Property was transferred to them without receiving any value in exchange, and that each of the Defendants accepted and retained the Debtor Property and/or transfers and received additional transfers, interest, profits and other enhancements as a result thereof.  *See id.* ¶¶ 166-167.  She says that the acceptance and retention of the Debtor Property and/or transfers, as well as the additional transfers, interest, profits and other enhancements resulting therefrom unjustly enriched the Defendants to the detriment of the Debtor and its creditors.  *Id.* ¶ 169.  She further maintains that the Debtor lacks an adequate remedy at law.  *Id.* ¶ 170.  Therefore, she contends that equity and good conscience requires full restitution by the Defendants of the Debtor Property and/or transfers, as well as additional transfers, interest, profits and other enhancements resulting therefrom.  *Id.* ¶ 168.

In New York, "[t]o state a cause of action for unjust enrichment, a plaintiff must demonstrate 'that (1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit . . . defendant to retain what is sought to be recovered.'" *Farina v. Bastianich*, 116 A.D.3d 546, 548, 984 N.Y.S.2d 46, 49 (2014) (quoting *Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 798, 686 N.Y.S.2d 186, 187 (1999); *see also Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield (In re Mid-Island Hosp., Inc.)*, 276 F.3d 123, 129 (2d Cir. 2002) ("A claimant seeking relief under a theory of unjust enrichment must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." (internal quotations omitted)).

Capstone contends that the Court should dismiss it from Count 18 because the Complaint "does not adequately plead a claim for unjust enrichment."  *See* Motion at p. 14.  It

says that is so because the Trustee has not identified with particularity an asset that belonged to
Level 8 that Capstone was enriched from; how the asset transfer was at Level 8's expense; or
that such asset was ever transferred from Level 8 to Capstone.  *See id.*  The Trustee disagrees.
She contends that the Complaint sufficiently alleges that "Capstone was enriched to the tune of
at least $2,500,000 per year at the Debtor's expense, and that it is against equity and good
conscience to permit Capstone to retain all of those benefits, based on its participation in the
fraud and conversion practiced by the other Defendants."  Opposition at p. 28.

Capstone's argument is well taken.  Despite the Trustee's broad allegation that "Capstone
was enriched to the tune of at least $2,500,000 per year," the Trustee does not point to any
particular payments made to, and retained by, Capstone.  *See id.*  Rather, the Complaint only
discusses individual payments where Capstone was essentially an intermediary.  *See e.g.*,
Complaint ¶ 48 (alleging that "Capstone paid On Five a royalty of $19,996.20 for sales of
William Rast branded products").  Rather than base Count 18 on actual payments retained by
Capstone, the Trustee appears to be relying upon the fact that, "[a]ccording to the Debtor's
income tax returns, after entering into the Sales Representative Agreement with Capstone, the
Debtor's revenues declines [sic] to less than $2 million in 2016 and 2017 from more than $5.5
million in 2015."  *Id.* at 3.

Such generalized arguments are insufficient to overcome Capstone's motion to dismiss.
The Trustee has not pointed to any payments actually retained by Capstone.  *See Farina*, 116
A.D.3d at 548 (stating that the first two factors for unjust enrichment are that the "defendant was
enriched . . . at plaintiff's expense").[28]  Further, even if the Trustee had made such a showing,

---

[28]    The Trustee's attempt to use the Debtor's declining revenues as proof that Capstone was enriched is unavailing.
Corporate revenues often vary from year to year, for all kinds of reasons, and the Trustee has alleged no facts
showing that the decline in this case was specifically due to Capstone unlawfully or inequitably retaining a share of
such revenue.

she also has failed to allege any facts showing "that it is against equity and good conscience to permit" Capstone from retaining such payments. *See id.* Therefore, the Court grants Capstone's motion to dismiss Count 18 of the Complaint, with leave to replead.

## Count 21 – Action for Fraudulent and/or Negligent Misrepresentation

In Count 21 of the Complaint, the Trustee seeks to hold Capstone, the Kims, and Spadaro liable to her on behalf of the Debtor's estate, in an amount to be determined at trial, for the Kims' and Spadaro's fraudulent and/or negligent misrepresentations to the Court. Complaint ¶ 198. As support, the Trustee contends that, at the direction of Sam Kim, (i) Spadaro and Mrs. Kim knowingly and intentionally made numerous misrepresentations to this Court regarding a host of matters relevant to the Debtor's operations;[29] (ii) Spadaro knowingly failed to disclose the operations of the Debtor and On Five and the allegedly avoidable transfers the Debtor made to On Five, and the Kims; and (iii) Spadaro failed to disclose the true facts concerning the operations of the Debtor and On Five in his affidavit accompanying the Debtor's chapter 11 petition, made pursuant to Local Rule 1007-1. *Id.* ¶¶ 191-93. She also asserts that misrepresentations by Spadero and Debtor's counsel misled the Court and creditors regarding the financial condition of the Debtor, and caused injury, harm and damage to the Debtor's estate. *Id.* ¶¶ 194-95. The Trustee does not allege that Capstone made misrepresentations of any kind to the Court or creditors. Rather, she asserts that Capstone is liable under Count 21, because Capstone

---

[29] The Trustee asserts that, among other things, Spadero and Mrs. Kim misrepresented to the Court: (i) the nature of the Debtor's business; (ii) the Debtor's business relationships with others including the Debtor's customers; (iii) the nature of the Debtor's contractual relationship with Capstone; the (iv) the existence of the business being conducted by On Five; (v) the existence of the $580,000 in funds transferred by the Debtor to On Five within one year of the Filing Date; (vi) the nature of the funds transferred by the Debtor to the Kims prior to the Filing Date; (vii) the revenues that the Debtor could reasonably expect to generate during the Chapter 11 Case; (viii) the validity of the claims asserted by the Debtor's creditors and (ix) the nature and extent of the Debtor's property and assets. Complaint ¶ 191.

allegedly "was aware of the misrepresentations made by the Defendant Spadaro and counsel for the Debtor that misled the Court and creditors regarding the financial condition of the Debtor, and Capstone had an affirmative duty to advise the Court and creditors that the representations were false." *Id.* ¶ 196.  She maintains that Capstone's silence—in the face of its alleged duty to speak—compounded the injury, harm and damage done to the Debtor's estate by reason of Spadero's and Debtor's counsel's alleged misrepresentations.  *Id.* ¶ 197.

Under New York law, "[t]o state a cause of action for fraudulent misrepresentation, 'a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" *Gomez-Jimenez v. New York Law Sch.*, 103 A.D.3d 13, 17, 956 N.Y.S.2d 54, 59 (2012) (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108 (2011) (internal quotation marks omitted)); *see also Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 543 (S.D.N.Y. 2007) (To state a claim for fraudulent misrepresentation, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." (internal citations and quotation marks omitted)).  Any alleged misrepresentation must be made with respect to an existing fact, as opposed to a representation concerning future conduct.  *See Hydro Inv'rs, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 21-22 (2d Cir. 2000).  Additionally, as fraudulent misrepresentation is a claim sounding in fraud, it is subject to the heightened pleading standards under Rule 9(b).  *See In re Monahan Ford Corp. of Flushing*, 340 B.R. at 26 ("Rule 9(b) requires that the allegations of fraudulent misrepresentations and omissions give particulars

as to the respect in which the statements were fraudulent and state the time and place the

statements were made and the identity of the person who made them." (citations omitted)).

The elements for a claim of negligent misrepresentation under New York law, are that:

"(1) the defendant had a duty, as a result of a special relationship, to give correct information;

(2) the defendant made a false representation that he or she should have known was incorrect;

(3) the information supplied in the representation was known by the defendant to be desired by

the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

plaintiff reasonably relied on it to his or her detriment." *Hydro Inv'rs, Inc. v. Trafalgar Power

Inc.*, 227 F.3d at 20 (citations omitted); *MatlinPatterson ATA Holdings LLC v. Fed. Express

Corp.*, 87 A.D.3d 836, 839, 929 N.Y.S.2d 571, 575 (2011) ("The elements of a claim for

negligent misrepresentation are: '(1) the existence of a special or privity-like relationship

imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the

information was incorrect; and (3) reasonable reliance on the information.'" (citations omitted)).

Capstone argues that the Court should dismiss it from Count 21 because the Trustee has

not, and cannot, allege that it made any fraudulent or negligent misrepresentations regarding the

Debtor. *See* Motion at 14-15.  In the Complaint, the Trustee does not allege that Capstone made

false or negligent misrepresentations regarding the Debtor.  Nor does she allege that Capstone

aided and abetted Spadero's, Debtor's counsel, or the Kims' alleged negligent or fraudulent

misrepresentations.[30]  Still, she argues that the allegations in the Complaint support her

contention that Capstone is liable to the Debtor's estate because by remaining silent in the face of

---

[30]    In support of Count 21 the Trustee alleges that "[b]y its actions before, during and after the Chapter 11 case,
Capstone not only facilitated the diversions an misappropriations of the Debtor's business and business
opportunities by On Five and Liaison Apparel, Capstone aided and abetted On Five's and Liaison Apparel's
diversions and misappropriations for its own benefit."  Complaint ¶ 81.  These allegations do not speak to aiding and
abetting alleged negligent and/or fraudulent misrepresentations.

those alleged misrepresentations, it aided and abetted Spadero's and the Kims' wrongdoing. Opposition at 30.

To state a claim against Capstone for aiding and abetting Spadero's and the Kims' alleged fraudulent and negligent misrepresentations, the Trustee must demonstrate that (i) Spadero and the Kims negligently or fraudulently breached their duties to disclose information to the Court and creditors, (ii) Capstone was aware of that breach, and (iii) Capstone substantially assisted Spadero and the Kims in breaching their duties. *Silvercreek*, 346 F. Supp. 3d at 498. The Trustee has satisfied the first prong of that standard. The Complaint has stated claims for fraudulent and/or negligent misrepresentation of facts against Spadero and the Kims because it alleges that Spadero and the Kims made material false representations to the Court, they intended to defraud the Debtor thereby, the Debtor reasonably relied upon the representation, and the Debtor suffered damage as a result of such reliance. Complaint ¶¶ 69-73; 191-197.

However, for the same reasons outlined above in connection with the Court's discussion of Counts 16 and 17, the Trustee has not adequately alleged that Capstone had knowledge of such misrepresentations. Rather, the Trustee has offered only conclusory allegations that Capstone was aware of the misrepresentations and knowingly failed to bring them to the Court's attention. *See id.* ¶¶ 69 (Capstone "knowingly failed to bring" the misrepresentations regarding the Sales Representative Agreement to light), 71 (the Court and creditors were misled as to the nature and scope of the estate's assets, all with the knowledge and consent of Capstone"), 196 ("Capstone was aware of the misrepresentations made by the Defendant Spadaro and counsel for the Debtor"), 197 (the harm done to the Debtor "was compounded by Capstone's failure to advise the Court and creditors of the misrepresentations made by Spadaro and counsel for the

Debtor).  As further discussed above, conclusory allegations of knowledge, without more, are

insufficient to overcome a motion to dismiss.

However, in any event, the Trustee fails to satisfy the third prong of the test.

*See Silvercreek*, 346 F. Supp. 3d at 498 (requiring an allegation of substantial assistance).

Sections 1107(a) and 1106 (a)(1) of the Bankruptcy Code provide that a chapter 11 debtor in

possession shall perform most of the duties assigned to a chapter 7 trustee under section 704(a)

of the Bankruptcy Code.  As such, it is settled that a debtor in possession owes fiduciary

responsibilities to its estate and creditors.  *See In re Harp,* 166 B.R. 740, 746 (Bankr. N.D. Ala.

1993) ("Chapter 11 debtors-in-possession . . . have fiduciary responsibilities to unsecured

creditors and other parties in interest requiring them to act in the capacity of a bankruptcy

trustee."); *see also In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 816-17 (Bankr. N.D.N.Y. 1989)

("The concept of the debtor-in-possession as a fiduciary of the estate, the creditors and the Court,

stems from its assumption of the rights and powers of a trustee and extends to a corporation's

officer, director, shareholder or managing employee where the facts disclose control and/or

management." (collecting cases)).  On that basis, the Trustee asserts that Spadero and the Kims

are fiduciaries of the Debtor's estate.  The Trustee does not assert that under the Bankruptcy

Code, or otherwise, Capstone owes fiduciary duties to the Debtor, such that it was bound to

correct the alleged misrepresentations by Spadero and the Kims.  Nor does she contend that the

Debtor or any other party in interest justifiably relied on the failure of Capstone to correct the

misstatements of Spadaro and the Kims.  Still, she argues that Capstone "stood by and did

nothing while the Debtor and Insider Defendants were violating [their fiduciary duties to the

Debtor]," and that "Capstone also substantially contributed to these breaches, and separately

violated its own duty to fully reveal what was going on so the dissipation of the Estate could be

stopped."  Opposition at 30.  It is well settled that "without an independent duty to disclose, mere inaction does not amount to substantial assistance for purposes of determining aider and abettor liability."  *Calcutti*, 273 F. Supp. 2d at 494.[31]  The Trustee has not demonstrated that Capstone had such a duty.[32]  Accordingly, the Trustee has failed to plead facts demonstrating that Capstone aided and abetted Spadero's or the Kims' alleged fraudulent or negligent misrepresentations.  The Court dismisses Capstone from Count 21 of the Complaint, with leave to replead.

## Count 23 – Disallowance of Claims Against All Defendants

In Count 23 of the Complaint, the Trustee seeks an order and judgment disallowing the claims of Capstone and any other Defendant who asserts a claim against the Debtor but who

---

[31]    In *Calcutti*, the court declined to find that the plaintiff had stated a claim for aiding and abetting fraud through mere inaction of an accountant, as "[w]e know of no case where mere inaction by a defendant has been held sufficient to support aider and abettor liability for fraud").  *Calcutti*, 273 F. Supp. 2d at 494 (quoting *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 148, 511 N.Y.S.2d 626, 629 (1987)).

[32]    The Trustee misplaces her reliance on *Chang v. JPMorgan Chase Bank, N.A.*, 845 F. 3d 1087 (11th Cir. 2017) in support of her proposition that a defendant may be liable for an aider or abettor of negligent and/or fraudulent misrepresentations where the defendant knew or should have known of such misrepresentations and where the primary violator owed a fiduciary duty to the plaintiff.  In that case, the plaintiff, "Chang," had advanced escrow funds to OPT Title and Escrow in connection with a commercial loan.  OPT maintained the escrow amounts in an account held at JPMorgan Bank (the "Bank").  *Id.* at 1091.  Chang was not a Bank customer.  He alleged that OPT's principal, "Gordon" had stolen his money from the escrow account with the assistance of Olga Padgett-Perdmom, a vice president at the Bank.  Chang sued the Bank for, among other things, negligence, gross negligence, aiding and abetting fraud or conversion.  The trial court dismissed Chang's claims against the Bank without leave to replead.  The narrow issue on appeal was whether the lower court erred in finding that amendment of the complaint would be futile and denying Chang's leave to amend.  *See id.*  In reviewing Chang's negligence claim (and whether it was appropriately dismissed without leave to amend), the Eleventh Circuit explained that as a general matter, under Florida law, a bank does not owe a duty of care to a non-customer with whom it has no direct relationship.  *See id.* at 1094.  However, an exception to the rule exists where a bank may be liable to a non-customer for its customer's misappropriation when there is a fiduciary relationship between the customer and the non-customer, and the bank knows (or ought to know) about the fiduciary relationship and the misappropriation being perpetrated.  *Id.* at 1095.  After finding that the Bank owed Chang a fiduciary duty, the court examined the other factors for an aiding and abetting claim and found that the proposed complaint was sufficient to state a claim for negligence.  *Id.* at 1097.

*Chang* is distinguishable.  First, Capstone is not a bank and does not have depository customers.  Second, the claim at issue in *Chang* was negligence, which has different elements than a claim for aiding and abetting negligent misrepresentation.  Moreover, applying the principle in *Chang* to the facts here would make little sense.  The Trustee has not alleged anywhere that Capstone owed a duty of care to either this Court, the Trustee or the estate's creditors by virtue of its knowledge that Spadaro and the Kims owed a fiduciary duty of care to the Court and the estate's creditors, and that Capstone, knowing of such duty and of their alleged misappropriation, should be liable.

have not turned over the property allegedly transferred to repaid the value of such property for which they are liable pursuant to section 550 of the Bankruptcy Code. *See* Complaint ¶ 209. In support of Count 23, the Trustee contends that certain parties, including Capstone, have filed proofs of claim or have otherwise asserted claims against the Debtor. *Id.* ¶ 207. She contends that Capstone is in possession of "property" recoverable by the Trustee under sections 542, 543, 550 or 553 of the Bankruptcy Code, or is a transferee of an avoidable transfer under sections 522, 544, 545, 547-549 or 724(a) of the Bankruptcy Code. *See id.* ¶¶ 206-207. As such, she alleges that pursuant to section 502(d) of the Bankruptcy Code,[33] the Court should disallow Capstone's claims until Capstone pays the Debtor's estate the amount or turns over any property, for which it is liable under sections 522, 542, 543, 550, or 553 of the Bankruptcy Code. Capstone contends that the Trustee cannot state a claim for disallowance of its claim because the Trustee does not have a viable avoidance action against it, and thus, section 502 is inapplicable here. *See* Motion at 16. The Trustee counters that Capstone's argument for dismissal of this claim is based on the mistaken contention that she has not made out a case for any avoidance action against Capstone. *See* Opposition at 31. She argues that because the claims against Capstone have merit as a matter of pleading, Count 23 should not be dismissed. *See id.*

The Court agrees with Capstone that dismissal of Count 23 is warranted, but with leave to replead. As noted above, the Court dismissed all counts as to Capstone, and therefore the Trustee has not alleged a viable avoidance claim against Capstone that triggers the applicability

---

[33]   Section 502(d) of the Bankruptcy Code provides:

[T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 50, or 553 of this title.

11 U.S.C. § 502(d).

of section 502 of the Bankruptcy Code.  However, because the Court also grants the Trustee

leave to replead the Complaint, this Count 23 will be revived if and when the Trustee properly

alleges an avoidance action as to Capstone.

**Count 24 – Subordination and Disallowance of Claims Against All Defendants**

In Count 24 of the Complaint, the Trustee seeks an order and judgment equitably

disallowing or subordinating the claims of Capstone and any other Defendant who asserts claims

against the Debtor.  Complaint ¶¶ 214-215.  As support for this claim, the Trustee asserts that

Capstone has filed a proof of claim against the Debtor, and that Capstone, and other Defendants,

have equitably and outrageously injured the Debtor by taking the Debtor's property for their own

purposes, fraudulently transferring the Debtor's property, or by aiding and abetting others'

conduct in taking the Debtor's property for their own purposes, thereby injuring the Debtor,

causing losses of revenue and harming the Debtor's creditors.  *See id.* ¶¶ 212-13.

Section 510(c) of the Bankruptcy Code states:

[T]he court may—

> (1) under principles of equitable subordination, subordinate for purposes of
> distribution, all or part of an allowed claim to all or part of another allowed
> claim or all or part of an allowed interest to all or part of another allowed
> interest.
> (2) order that any lien securing such a subordinated claim be transferred to
> the estate.

11 U.S.C. § 510(c).  To prevail on a claim for equitable subordination, the Trustee must plead:

(1) the claimant engaged in inequitable conduct; (2) the misconduct caused injury to a creditor;

and (3) equitable subordination is not inconsistent with the Code.  *In re E. End Dev., LLC*,

No. 8-12-76181-REG, 2017 WL 1277443, at *9 (Bankr. E.D.N.Y. Apr. 4, 2017) (citing *Pepper*

*v. Litton*, 308 U.S. 295 (1939))*; see also In re Poughkeepsie Hotel Assocs. Joint Venture*,

132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) (explaining that the elements of an equitable

59

subordination claim that a court should determine are: (1) whether the claimant engaged in fraudulent conduct, (2) whether the conduct resulted in injury to creditors, and (3) whether subordination would be consistent with other bankruptcy law).  Further, courts considering equitable subordination under section 510 have noted that it should be granted in rare cases, and reserved for those engaged in "gross and egregious" conduct "tantamount to fraud, misrepresentation, overreaching or spoliation."  *80 Nassau Assocs. V. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R 832, 838-39 (Bankr. S.D.N.Y. 1994).

Capstone asserts that the Court should dismiss if from Count 24 because the Trustee has not pled a claim for equitable subordination since, other than impermissible group pleading, there are no allegations of any affirmative misconduct by Capstone that rises to the level of "gross and egregious" conduct required under the case law.  *See* Motion at 17.  It further contends that the Trustee fails to satisfy the particularity standard under the Rules.  *See id.*

The Trustee disputes that she has not pled serious and egregious misconduct by Capstone. *See* Opposition at 32.  She says that the Complaint alleges that the outrageous result achieved by the Insider Defendants during the course of the chapter 11 case could not have been achieved without the knowing and active participation and financial support given by Capstone to the primary malefactors.  *See id.*  She contends that Capstone should be jointly and severally liable for the fraudulent misrepresentations of Spadaro and the Kims, based on Capstone's aiding and abetting the lies told to the Court and creditors while the Debtor's estate was being dissipated by fraudulent conduct.  *See id.*  In sum, the Trustee maintains that Capstone's misconduct was egregious and tantamount to fraud, and its refusal to acknowledge its participation in the wrongs cannot be condoned.  *See id.*

60

The Court dismisses Capstone from Count 24 given that the Court has dismissed the remainder of the counts as to Capstone.  As a consequence, the Complaint fails to allege serious and egregious misconduct by Capstone, whether through its own actions or by aiding and abetting the actions of the other Defendants.  *See In re E. End Dev., LLC*, 2017 WL 1277443 at *9 (explaining that the first element of an equitable subordination claim is a showing that the claimant engaged in fraudulent conduct).  Therefore, the Court dismisses Count 24 as to Capstone, with leave to replead.

<u>CONCLUSION</u>

Based on the foregoing the Court finds that the Trustee has failed to meet its burden of demonstrating that the Complaint states claims for relief against Capstone under Counts 1, 2, 3, 16, 17, 18, 21, 23, and 24.  Accordingly, the Court dismisses those claims against Capstone, but with leave to replead.

IT IS SO ORDERED.

Dated: January 26, 2021
New York, NY

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge