NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
In re:

                                          Chapter 7

LEVEL 8 APPAREL, LLC,

                                          Case No. 16-13164 (JLG)

       Debtor.
--------------------------------------------------------------------x
ANGELA TESE-MILNER, as Trustee of the
Estate of Level 8 Apparel, LLC, Debtor,

       Plaintiff,                                  Adv. Pro. No. 19-1335 (JLG)

-against-

BON SEUNG KIM, a/k/a Sam Kim, a/k/a Scott Kim,
KUK JA KIM,
BOKYOUNG KIM,
FRANK SPADARO,
RICHARD ALOISI,
PETER LEWIS,
JUNGE CHAE,
JENNIFER SENGER,
CARLOS QUINTILIANI,
ON FIVE CORPORATION,
LIAISON APPAREL CORPORATION and
CAPSTONE CAPITAL GROUP, LLC,

       Defendants.
--------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER ON INSIDER DEFENDANTS' <u>MOTION TO DISMISS COMPLAINT</u>


**APPEARANCES:**

LAW OFFICE OF WILLIAM F. MACREERY
7 Granite Springs Road
Granite Springs, New York 10527
By:    William F. Macreery, Esq.

-and-

The Law Firm of Tese & Milner
735 Wickham Avenue, P.O. Box 35
Mattituck, New York 11952
By:    Michael M. Milner, Esq.

*Counsel for the Plaintiff-Trustee*


PICK & ZABICKI LLP
369 Lexington Avenue, 12th Floor
New York, New York 10017
By:    Douglas J. Pick, Esq.
         Eric C. Zabicki, Esq.

*Counsel to Defendants Bon Seung Kim, a/k/a Sam Kim, a/k/a Scott Kim, Kuk Ja Kim, Bokyoung Kim, Frank Spadaro, Richard Aloisi, Peter Lewis, Junge Chae, Jennifer Senger, Carlo Quintiliani, On Five Corporation and Liaison Apparel Corporation (for purposes of motion only)*

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

<u>INTRODUCTION</u>

Angela Tese-Milner is the chapter 7 trustee (the "Plaintiff" or the "Trustee") of the estate

of Level 8 Apparel LLC (the "Debtor") in this converted chapter 11 case.  In this adversary

proceeding she is seeking to recover damages for the alleged systematic diversion,

misappropriation and looting of the Debtor's business and assets both before and after the Debtor

commenced its chapter 11 case.  The Trustee's complaint (the "Complaint" or "Compl.") names

twelve defendants (collectively, the "Defendants"), consisting of nine individuals and three

entities.  *See* Compl. ¶¶ 1-14 [ECF No. 1].[1]  The individuals are: Bon Seung Kim ("Sam Kim");

Kuk Ja Kim ("Mrs. Kim" and, together with Sam Kim, the "Kims"), Sam Kim's wife; Bokyoung

Kim, Sam and Mrs. Kim' daughter in law; Frank Spadaro; Richard Aloisi; Peter Lewis; Junge

Chae; Jennifer Senger; and Carlo Quintiliani (the individuals collectively will be referred to as

the "Individual Defendants").  The entities are: Capstone Capital Group LLC ("Capstone"); On

Five Corporation ("On Five"); and Liaison Apparel Corporation ("Liaison Apparel").

Hereinafter, the Individual Defendants together with On Five and Liaison Apparel collectively

will be referred to as the "Insider Defendants."  The Complaint contains twenty-four Claims for

Relief that are alleged against some or all the Defendants.  *Id.* ¶¶ 82-215.  Without limitation,

and in broad strokes, they include claims to avoid and recover alleged fraudulent transfers,

preferential transfers and unauthorized post-petition transfers, and to recover damages for alleged

fraud, conversion, breach of fiduciary duty, misrepresentation and unjust enrichment, as well as

---

[1]    Citations to "ECF No. ___" refer to documents filed on the electronic docket of the instant Adversary
Proceeding (No. 19-1335).  Documents filed in the Debtor's main bankruptcy case or other cases will have the
appropriate "Case No." designation before the "ECF No. ___" reference.

aiding and abetting the primary misconduct committed by other Defendants. The matter before

the Court is the Insider Defendants' motion to dismiss those Counts pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (the "Motion" or "Mot.").[2] The Trustee

opposes the Motion (the "Opposition" or "Opp'n").[3] For the reasons set forth herein, the Motion

is denied.

JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(E), (F), (H), & (K).

FACTS[4]

Background

On February 11, 2009, Sam Kim and others formed the Debtor to engage in the business

of designing, producing samples for buyers, sourcing, arranging manufacturing, importing and

selling men's and women's apparel and outerwear under licensed trademarks and private labels

for large retailers. *See* Compl. ¶ 22. The Debtor's customers and business relationships included

Costco Wholesale Corporation ("Costco") and its Kirkland Signature line of apparel, as well as

---

[2]   *See Motion to Dismiss—Application in Support of an Order Dismissing Complaint* [ECF No. 8]; *Reply to Trustee's Opposition to Motion to Dismiss Complaint of Defendants Bon Seung Kim, a/k/a Sam Kim, a/k/a Scott Kim, Kuk Ja Kim, Bokyoung Kim, Frank Spadaro, Richard Aloisi, Peter Lewis, Junge Chae, Jennifer Senger, Carlo Quintiliani, On Five and Liaison Apparel Corporation* [ECF No. 32].

[3]   *See Trustee's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint Filed By Bon Seung Kim, Kuk Ja Kim, Bokyoung Kim, Frank Spadaro, Richard Aloisi, Peter Lewis, Junge Chae, Jennifer Senger, Carlo Quintiliani, On Five and Liaison Apparel Corporation* [ECF No. 19].

[4]   As explained below, the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.").

2

Burlington Merchandising Corporation, Amazon, Blue Fly, Bon Ton, Gilt, Groupon and Liverpool (collectively, the "Customers"). *See id.* ¶¶ 46, 47. On November 14, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 in this Court.[5] Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code it remained in possession and control of its business and assets as a debtor in possession until August 22, 2018 (the "Conversion Date"), when its case was converted to one under chapter 7 and the Trustee was appointed. *See Order Dated 8/22/2018 Granting Motion to Convert Chapter 11 Case to Chapter 7* [Case No. 16-13164, ECF No. 125].

The Trustee contends that prior to the Petition Date and during the Debtor's chapter 11 case, and after the Conversion Date, the Individual Defendants engaged or participated in a systematic and continuous fraudulent scheme to divest the Debtor of its assets in order to shield them from the Debtor's creditors. *See id.* ¶ 38. She maintains that the alleged fraudulent scheme included looting, misappropriating, converting and diverting all the Debtor's assets, business and Customers from the Debtor to its affiliated companies, On Five and Liaison Apparel. *Id.* She says that those entities were formed for the specific purpose of participating in the alleged scheme. *See id.* The Trustee contends that the Kims hatched the scheme in May 2015 when they began to loot the Debtor by causing it to make cash payments to them, for no consideration. She says that through the Petition Date, those cash transfers and payments aggregated $330,280.00. *See id.* ¶¶ 28, 29. The Kims took that action at the same time that Sam Kim and the Debtor were engaged in lawsuits with Stuart's LLC ("Stuart's") and Wayne Galvin ("Galvin"), and with Weihai Textile Group ("Weihai"), which lawsuits ultimately resulted in the entry of judgments

---

[5]   That day, World Cross Culture, Inc., an affiliate of the Debtor also filed a chapter 11 petition herein. *See* Petition [Case No. 16-13166, ECF No. 1]. It is not a party to this litigation.

aggregating more than $4,500,000 against Sam Kim and the Debtor.  *See id.* ¶¶ 24, 25, 27.  In

October 2015, shortly after the conclusion of the trials in the Stuart's-Galvin and Weihai

lawsuits, Sam Kim furthered the scheme by causing the Debtor to enter into a "Sales

Representative Agreement" with Capstone.  *See id.* ¶ 30.  The Trustee asserts that the agreement

is a one-sided agreement that heavily favors Capstone because it places all assets of the Debtor's

business with Capstone and obligates the Debtor to perform valuable services for Capstone for

an unspecified and uncertain commission.  *See id.* ¶¶ 31-32.  In sum, the Trustee asserts that the

agreement turned the Debtor into a shell company with no identifiable assets besides the

workforce, and unlimited potential liabilities.  *Id.*

The Trustee maintains that Bokyoung Kim took the next step in the alleged fraudulent

scheme in March 2016 when she formed On Five and capitalized the business with $580,000 of

the Debtor's funds that the Debtor transferred to On Five during the period of March 11, 2016

through April 12, 2016.  *See* Compl. ¶ 39.  The Debtor allegedly received no consideration for

those payments.  *See id.* ¶ 106.  The Trustee says that almost immediately after On Five was

formed, Sam Kim, Frank Spadaro, Richard Aloisi, Peter Lewis, Jennifer Senger and Junge Chae,

began to work for On Five, and funneled all of the Debtor's business and Customers to On Five,

other than the business associated with Costco's Kirkland Signature brand, which remained with

the Debtor until the Conversion Date.  *See id.* ¶¶ 43-52.  She contends that those Individual

Defendants misappropriated and steered the Debtor's business opportunities to On Five by

(a) negotiating license agreements on behalf of On Five for sale to the Debtor's Customers,

including Costco; (b) advising the Debtor's Customers that On Five was merely a new name for

Level 8; (c) transferring existing orders and new purchase orders from the Debtor's Customers to

On Five; (d) causing Customers to reissue checks payable to the Debtor, to On Five; and

4

(e) securing purchase orders with On Five for Tahari branded products that On Five had no license to sell. *See id.* She maintains that through those actions, those Defendants diverted revenues of more than $2,200,000 from the Debtor to On Five. *Id.* The Trustee complains that the Individual Defendants compounded the financial damage that they allegedly inflicted on the Debtor by remaining on the Debtor's payroll, even as they were working adversely to the best interests of the Debtor. The Trustee says that during the six month period beginning on March 2, 2016, when On Five was formed, through the Petition Date, the Debtor paid Spadero, Aloisi, Lewis, Senger and Chae compensation totaling $418,573.76, while they were secretly performing work for On Five and diverting the Debtor's business to On Five. *See id.* ¶¶ 53-57. She maintains that those Individual Defendants remained on the Debtor's payroll after the Petition Date for the nearly two years that the Debtor remained in chapter 11 and were paid salaries aggregating $902,895.35, even as they continued to work for On Five. *See id.* ¶¶ 63-68.

The Trustee asserts that the Individual Defendants took the last step in furtherance of the alleged scheme on August 30, 2018, after the Conversion Date, when they formed Liaison Apparel to conduct the same type of business as On Five and the Debtor. *See id.* ¶ 13. She says the On Five and Liaison Apparel assumed the Debtor's payroll on and after the Conversion Date (*see id.* ¶ 76), and the Insider Defendants continued to conduct business with Capstone, Costco and other former customers of the Debtor, in the name of On Five and Liaison Apparel. *See id.* ¶ 77. She also contends that between September 28, 2018 and July 2019, Capstone made payments totaling $1,885,941.72 to On Five under conventional factoring arrangements, including $979,264.57 associated with sales to Costco Mexico improperly diverted from the Debtor to On Five prior to the Conversion Date. *Id.* ¶ 79.

5

<u>Rule 12(b)(6) Pleading Standards</u>

The Insider Defendants seek to dismiss each of the twenty-one claims for relief asserted against them in the Complaint pursuant to Rule 12(b)(6) and section 105(a) of the Bankruptcy Code.[6]  Under Rule 12(b)(6), a party may seek to dismiss a complaint "for failure to state a claim for relief upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (citations omitted); *accord Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570.  In *Iqbal*, the Supreme Court outlined a two-step approach in resolving a motion to dismiss.  First, it instructed that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  That is because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  In exercising this review, a court's "task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether

---

[6]    Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S.

232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982);

*accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a

motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." (citation and internal quotation marks omitted)).  In resolving a Rule 12(b)(6)

motion, "courts must consider the complaint in its entirety, as well as other sources courts

ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  For these

purposes, "the complaint is deemed to include any written instrument attached to it as an exhibit

or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc.

v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus., Inc.

v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Allegations of intentional fraudulent transfer must satisfy the heightened pleading

requirements of Fed. R. Civ. P. 9(b).[7]  *See Sharp Int'l Corp. v. State Street Bank & Trust Co.

(In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *see also In re Bernard L. Madoff Inc.

Sec. LLC*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) ("Actual fraudulent transfer claims brought

under either section 548(a)(1)(A) of the Code or section 276 of the NYDCL must meet the

heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."

(citations omitted)).  Under that rule, a plaintiff alleging fraud must state "the circumstances

constituting fraud . . . with particularity."  Fed. R. Civ. P. 9(b).  Accordingly, the party asserting

---

[7]    Rule 9(b) is made applicable herein by Bankruptcy Rule 7009.

an intentional fraudulent transfer claim must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002); *accord Flannigan v. Vulcan Power Grp., L.L.C.*, 712 F. Supp. 2d 63, 67 (S.D.N.Y. 2010); *Adelphia Recovery Tr. v. Bank of America, N.A.*, 624 F. Supp. 2d 292, 336 (S.D.N.Y. 2009). In contrast, claims for constructive fraudulent transfers need only satisfy the less rigorous requirements of Rule 8(a). *See Enron Corp. v. Granite Constr. Corp. (In re Enron Corp.*, No. 03-93172, 2006 WL 2400369, at *5 (Bankr. S.D.N.Y. May 11, 2006). That is to say that such claims need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[8]

The Complaint and the Motion

The Trustee named some or all of the Insider Defendants in twenty-one counts in the Complaint. Without limitation, those counts seek to (i) avoid and recover alleged preferential and fraudulent transfers, including unauthorized pre and post-petition transfers,[9] (ii) recover damages for alleged breaches of fiduciary duty, fraud, malfeasance, misappropriation and

---

[8]    Rule 8 is made applicable herein by Bankruptcy Rule 7008.

[9]    In Counts 4-11, 13, and 17, the Trustee seeks to avoid and recover payments from some or all of On Five, Sam Kim, Mrs. Kim, Bokyoung Kim, Spadaro, Aloisi, Lewis, Senger, Chae and Quintiliani, (i) as alleged actual and constructive fraudulent transfers under sections 544, 548, 550, NYDCL sections 273, 276 and 278, respectively; (ii) preferential transfers under sections 547 and 550 of the Bankruptcy Code; and (iii) alleged pre-petition fraudulent transfers and illegal post-petition transfers pursuant to sections 544, 548, 549 and 550 of the Bankruptcy Code and NYDCL sections 273, 276 and 278, and recover damages for conversion of assets. The NYDCL was amended effective April 4, 2020. The amended statute applies to transactions occurring on or after April 4, 2020. *See* NY LEGIS 580 (2019), 2019 Sess. Law News of N.Y. Ch. 580 (A. 5622) (McKINNEY'S). As such, the amendments are inapplicable to this matter.

conversion of the Debtor's assets and business, and unjust enrichment,[10] (iii) impose constructive

trusts on assets allegedly in the hands of the Insider Defendants or impose alter ego liability on

certain of those defendants,[11] and (iv) disallow and subordinate the Insider Defendants' claims.[12]

In support of the Motion, the Insider Defendants contend that the Complaint must be

dismissed because even assuming, *arguendo*, that the Trustee prevails against them on her

Claims for Relief, the recovery would benefit only the Debtor's secured creditors or the holders

of administrative claims in the chapter 7 and chapter 11 cases. *See* Mot. ¶¶ 2-3.  In that light,

they say that the Court should dismiss the Complaint because prosecution of the adversary

proceeding constitutes "purposeless litigation" that serves to benefit only the Trustee and her

counsel, and certainly not general unsecured creditors. *Id*. ¶¶ 8-11.  The Insider Defendants also

challenge the facts underpinning the allegations in the Complaint.  They say that the Trustee has

improperly asserted claims against certain of the Individual Defendants who they say "were

---

[10]    Those counts are summarized as follows:

      In Count 12, the Trustee seeks to recover damages from On Five, Sam Kim, Spadaro, Aloisi and Bokyoung
      Kim occasioned by their alleged fraud, breach of fiduciary duty and conversion pursuant to sections 362,
      541, 544, 548, and 550 of the Bankruptcy Code.

      In Counts 16 and 18, the Trustee seeks to recover damages from all Insider Defendants occasioned by their
      alleged (i) fraud and conversion, and (ii) unjust enrichment, respectively.

      In Counts 19 and 20, the Trustee seeks to recover damages from the officers and directors of the Debtor, On
      Five and Liaison Apparel, based upon alleged acts of conspiracy and their alleged tortious interference with
      existing and prospective business expectancy, respectively.

      In Count 21, the Trustee seeks damages from Sam Kim, Mrs. Kim, and Spadaro occasioned by their alleged
      fraudulent and negligent misrepresentations.

      In Count 22, the Trustee seeks damages from Sam Kim and Mrs. Kim occasioned by their alleged breaches
      of contract.

[11]    In Counts 14 and 15, the Trustee seeks, respectively, (i) to impose a constructive trust on all assets of On Five
and Liaison Apparel; and (ii) to impose alter ego liability on Five, Liaison Apparel and Sam Kim.

[12]    In Counts 23 and 24, the Trustee seeks to disallow the claims of all Insider Defendants pursuant to sections 502,
522, 543-545, 547-550, 553 or 724(a) of the Bankruptcy Code, and to disallow and subordinate those claims
pursuant to section 510(c) of the Bankruptcy Code.

merely employees or independent contractors of the Debtor who had no decision making and check writing authority whatsoever." *Id.* ¶ 4.  In support of those contentions, the Insider Defendants submitted declarations from Bokyoung Kim, Junge Chae, Peter Lewis, Richard Aloisi, Jennifer Senger, Carlo Quintiliani and Mrs. Kim.[13]  In substance, they contend that the Court can consider the facts alleged in the declarations in assessing the adequacy of the pleadings, and that when the Court does so, it will find that, as a matter of law, the Trustee cannot state claims against them.  Finally, the Individual Defendants challenge the adequacy of the pleadings.

DISCUSSION

The Court will first consider the merits of the Individual Defendants' assertion that it should dismiss the Complaint and bar the prosecution of the adversary proceeding as "purposeless litigation."  A chapter 7 trustee is the representative of the debtor's estate and has the capacity to sue and be sued.  11 U.S.C. § 323.  Without limitation, a trustee is duty-bound to "collect and reduce to money property of the estate," and "investigate the financial affairs of the debtor."  11 U.S.C. § 704(a)(1), (4).  The "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  *Id.* § 541(a)(1).

---

[13]   Those declarations are filed, as follows:

*Declaration of Bokyoung Kim in Support of Motion to Dismiss Complaint* [ECF No. 9].

*Declaration of Junge Chae in Support of Motion to Dismiss Complaint* [ECF No. 10].

*Declaration of Peter Lewis in Support of Motion to Dismiss Complaint* [ECF No. 11].

*Declaration of Richard Aloisi in Support of Motion to Dismiss Complaint* [ECF No. 12].

*Declaration of Jennifer Senger in Support of Motion to Dismiss Complaint* [ECF No. 13].

*Declaration of Carlo Quintiliani in Support of Motion to Dismiss Complaint* [ECF No. 14].

*Declaration of Kuk Ja Kim in Support of Motion to Dismiss Complaint* [ECF No. 17].

Consequently, "[u]nder the Bankruptcy Code the trustee stands in the shoes of the bankruptcy corporation and has standing to bring any suit that the bankruptcy corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) (citations omitted).  The trustee's objective is to maximize the value of the estate's assets, and in doing so, he or she is empowered to prosecute actions on behalf of the estate for the benefit of creditors. *See In re Rosenberg*, 495 B.R. 196, 202 (Bankr. E.D.N.Y. 2010) ("The trustee is 'accountable for all property received,' . . . and has the duty to maximize the value of the estate . . . . He is directed to investigate the debtor's financial affairs, and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property[.]" (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985))) (internal citations omitted); *see also Henderson v. Legal Helpers Sols., L.L.C.* (*In re Huffman*), 486 B.R. 343, 354 (Bankr. S.D. Miss. 2013) ("A bankruptcy trustee is charged with the duty to maximize the value of the bankruptcy estate for creditors. To accomplish this task, a trustee is authorized, as the representative of the estate, to 'commence and prosecute any action or proceeding in behalf of the estate before any tribunal.'" (internal citations omitted)).

A trustee is not required to pursue the recovery of every transfer that may be avoidable and recoverable under the Bankruptcy Code, but instead has a substantial degree of discretion in determining whether to prosecute an action. *See McCord v. Agard (In re Bean)*, 251 B.R. 196, 204 (E.D.N.Y. 2000) ("A trustee is under no mandatory duty to pursue and recover every transfer that might be avoidable under one of the Bankruptcy Code's avoidance sections.  The relevant empowering sections 544, 545, 547, 548, 549 and 550 give the trustee discretion to utilize the remedies set forth but do not force him to do so."), *aff'd*, 252 F.3d 113 (2d Cir. 2001);

*see also In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988)

("The responsibilities of a trustee or debtor in possession to collect assets and to effectuate the

policy of equitable distribution do not *per se* compel litigation by such fiduciaries.  To the

contrary, a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to

sue or not to sue.").  In exercising such discretion, the trustee should undertake a cost-benefit

analysis as to whether prosecution of the action would result in a meaningful recovery for the

estate's creditors.  *See In re Bean*, 251 B.R. at 204 (stating that "a trustee must conduct a

cost-benefit analysis" in determining whether to pursue an action that would benefit the estate).

If that analysis reveals that the only parties who will likely benefit from an investigation of a

claim are the trustee and his professionals, the action is "purposeless litigation."  *In re First Cent.

Fin. Corp.*, 269 B.R. 502, 518 (Bankr. E.D.N.Y. 2001) (citing *In re Bean*, 251 B.R. at 205).

"The trustee breaches his duty if the action costs the estate a disproportionately large sum for a

minimal or an improbably recovery to the estate."  *Id.*; *see also In re C. Keffas & Son Florist,

Inc.*, 240 B.R. 466, 474 (Bankr. E.D.N.Y. 1999) (noting that a trustee who fails to perform a

cost-benefit analysis in administering an estate by collecting funds or pursing action insufficient

to pay creditors breaches his or her statutory duty under section 704).

A creditor lacks standing to maintain an action under New York law to avoid a

transaction as a fraudulent conveyance "where the transferred property is encumbered by

sufficient prior liens such that the creditor-plaintiff would not be entitled to reach any portion of

the property if the conveyance were set aside."  *De Vos v. Lee*, No. 07-CV-804, 2010 WL

277070, at *2 (E.D.N.Y. Jan. 19, 2010)); *see also Chemtex, LLC v. St. Anthony Enters., Inc.*, 490

F. Supp. 2d 536, 542 (S.D.N.Y. 2007) ("[A] complaining creditor must first plead and then

demonstrate that it had an equity stake in the debtor's assets – that is, that some portion of the

debtor's assets would have been available to satisfy the unsecured creditor's claims had there

been no conveyance. Absent any such equity in the assets conveyed, an unsecured creditor lacks

standing to challenge the conveyance as fraudulent." (citations omitted)).  Accordingly, for

example, in *Miller v. Forge Mench P'ship Ltd.*, No. 00 Civ. 4314 (MBM), 2005 WL 267551, at

*4-5 (S.D.N.Y. Feb. 2, 2005) the district court dismissed the plaintiff's fraudulent conveyance

claims on the grounds that it lacked standing to sue under New York's fraudulent conveyance

statute where the "[non-party creditor's] secured debt exceeded the value of [defendant's]

foreclosed-upon assets by about $2.5 million, and thus dwarfed the approximately $445,000

judgment owed to [plaintiff]."

     The Insider Defendants contend that the Trustee is not exercising sound business

judgment in pursuing this action, and that the Court should dismiss it, because even if successful,

the Trustee will not be able to make a meaningful distribution to unsecured creditors.

*See* Mot. ¶¶ 8-11.  They say that is so because (i) the Debtor's assets that the Trustee seeks to

avoid in the litigation are subject to the IRS's federal tax liens and multiple judgments

aggregating in excess of $263,300 and $4.55 million, respectively; (ii) the Kims effectively may

be judgment proof because their assets are subject to the judgments and security interests of their

creditors, and as such, there is a low probability of recovery from them for the estate; (iii) even if

the foregoing secured claims, and the administrative claims of the chapter 7 and chapter 11

professionals were fully paid, any remaining funds would most likely be paid to the New York

City Department of Finance on account of its $573,514.57 priority tax claim; and (iv) Capstone

has asserted a security interest in all of On Five's assets.  *See* Mot. ¶¶ 2, 8, 11.  Relying on

*De Vos v. Lee*, they also contend that because the Debtor's assets are fully encumbered by the tax

and judgment liens, the Trustee lacks standing to assert a fraudulent conveyance claim under

New York law (Counts 5-7, 9-10, 13) against the Insider Defendants. *Id.* ¶ 10. The Trustee

disputes those contentions. *See* Opp'n at 10-12. For the reasons stated below, the Court finds no

merit to the Insider Defendants' contentions.

Nothing in the Complaint or the record of this Motion or the case supports the Insider

Defendants' contention that there is no equity in the Debtor's assets for the benefit of the estate's

general unsecured creditors. The record demonstrates the opposite. Contrary to the defendants'

assertions, Capstone and the judgment creditors—Weihai and Stuart and Galvin—are unsecured

creditors and have filed unsecured claims herein. *See* Proof of Claim #6 (Weihai), Proof of

Claim #9 (Stuart), Proof of Claim #10 (Galvin), Proof of Claim #11 (Capstone). The IRS has

filed the only secured claim in this case.[14] In her Complaint, the Trustee is seeking damages

exceeding $6 million. In construing the Complaint in a light most favorable to the Trustee, even

assuming, *arguendo*, that the IRS's secured tax claim totaling $263,000 is valid and enforceable,

the damages that the Trustee seeks plainly dwarf that claim. The same holds true after factoring

in the unsecured priority claim of the New York City Department of Finance. Further, although

there will be expenses of the Trustee and her professionals of administering the estate and

litigating this action, there is nothing in the record to support the Insider Defendants' contention

that after factoring in those costs, there would be nothing left for unsecured creditors. As for the

collectability of any judgment against the Kims, although the Court takes judicial notice of the

existence of the Weihai and Stuart-Galvin Judgments, and the IRS's asserted tax liability, there is

no evidence in the record relating to the Kims' the financial condition or otherwise

---

[14]    As noted above, on a motion to dismiss, the Court may take judicial notice of documents filed in the record of
the Debtor's bankruptcy case docket. *See, e.g.*, *Campos v. Aegis Realty Mgmt. Corp.*, No. 19 CIV. 2856 (KPF),
2020 WL 433356, at *7 (S.D.N.Y. Jan. 28, 2020) (noting that on a motion to dismiss, the Court can consider "any
information cited to it that is present in the Amended Complaint, documents attached to the Amended Complaint, or
materials of which the Court can take judicial notice, such as the Bankruptcy Court docket").

demonstrating that the Kims are judgment proof.  Finally, the Insider Defendants' contention that

the assets the Trustee seeks to avoid and recover from Defendant On Five are subject to

Capstone's liens are contradicted by the Trustee's allegations that Capstone only has a traditional

factoring arrangement with On Five, and does not have a security interest on all of On Five's

assets (*see* Compl. ¶¶ 52, 78-79; *see also* Opp'n at 7, 11), which allegations the Court must

accept as true on a motion to dismiss.  At best, this presents a factual dispute between the Trustee

and the Insider Defendants as to the nature and extent of Capstone's interests and relationship

vis-a-vis On Five, the resolution of which is not appropriate at the motion to dismiss stage.

*See, e.g.*, *DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003) (finding that "a disputed issue of

fact [] is inappropriate to consider in the context of a Rule 12(b)(6) motion."); *Bernstein*

*v. Seeman*, 593 F. Supp. 2d 630, 634 (S.D.N.Y. 2009) (concluding that defendant's argument

that it cannot be held liable as an employer was an issue that required the presentation of

additional fact, "and a motion to dismiss is not the appropriate stage at which to resolve such

matters").

      The Court rejects the Insider Defendants' assertion that it should dismiss this action on

the grounds that the Trustee is not exercising sound business judgment in pursuing this action.

The Court also rejects the Insider Defendants' assertion that the Trustee lacks standing to assert a

fraudulent conveyance claim under New York law against the Insider Defendants.  The

defendants misplace their reliance on *De Vos v. Lee*, 2009 WL 10640615, at *1.  In that case, the

plaintiff brought state law claims (under New York law) against his former employer, Sun

Graphics Corp. ("Sun"), its owners (the "Pro Se Defendants"), and Sun's law firm, Levy Davis.

*See id.* at *1.  Among other things, the plaintiff sought to hold Sun's owners individually liable

under a theory of alter ego, and asserted fraudulent conveyance claims against Levy Davis as the

transferee of certain transfers from Sun.  The parties filed motions and cross-motions for summary judgment.  *See id.*  The district court granted summary judgment in favor of the plaintiff as to his veil piercing claim against the Pro Se Defendants but granted summary judgment in favor of defendant Levy Davis as to the plaintiff's fraudulent conveyance claim.  *Id.*  Thereafter, the Pro Se Defendants moved for reconsideration of the court's decision and order, arguing that the ruling was internally inconsistent because the court had found that the plaintiff was injured for purposes of the veil-piercing claim against them, but was not injured and lacked standing with respect to the fraudulent conveyance claim against Levy Davis.  *See id*.  The court denied the reconsideration motion.  It found that its earlier decision was not internally inconsistent because the applicable standard for establishing injury for purposes of the veil piercing doctrine differed from that applicable to a claim for fraudulent conveyance.  The court explained that a claim for fraudulent conveyance requires a highly particularized showing of injury than that of a veil-piercing claim because under New York fraudulent transfer laws, the plaintiff must establish that it has some equity in the assets transferred.  *See id.* at *2-3.  Applying that standard, the court concluded that the plaintiff did not establish an injury, and therefore lacked standing, because the funds at issue were fully encumbered by tax and other liens aggregating $1,378,913.66.  *Id.*  Here, if the IRS's secured claim is allowed in the amount asserted ($263,000), it is significantly smaller than the total value of the transfers the Trustee seeks to recover and avoid (in excess of $6,000,000) in the Complaint.  Accordingly, assuming the truth of the allegations in the complaint, in contrast to the plaintiff in *De Vos v. Lee*, the Trustee has standing to bring a claim under New York's fraudulent conveyance provisions because she has demonstrated that there is equity in the assets she seeks to recover.

16

Next, the Court considers the weight, if any, that it will give to the Insider Declarations. The Trustee contends that the declarations should be excluded from the record because the Individual Defendants are submitting them in an improper attempt to contest the factual allegations in the Complaint regarding their titles, status and relationship with the Debtor, On Five and Liaison, rather than accepting the Plaintiff's allegations as true, which is required on a motion to dismiss for failure to state a claim. *See* Opp'n at 16. Moreover, she denies that the declarations accurately portray the roles that the Individual Defendants played in connection with the Debtor, On Five, and Liaison. *Id.* The Individual Defendants acknowledge that they submitted their declarations to rebut certain of the allegations made against them in the Complaint. *See* Reply ¶ 1(b). They contend that, as a rule, facts pleaded in a complaint are not entitled to the presumption of truth when they are contradicted by documentary evidence. *Id.* They maintain that their declarations and the documents attached thereto (consisting of tax documents such as Form W-2s and Form 1099s) clearly contradict many of the Trustee's allegations with respect to the scope of the Individual Defendants' authority, including that the declarants are or were officers, directors or otherwise "insiders" of the Debtor, On Five and/or Liaison, and demonstrate that they are merely employees or independent contractors of those entities. *Id.* Citing *Iqbal*, 556 U.S. at 678, they argue that the Court is not required to simply ignore the declarants' sworn statements and documentary evidence when considering, among other things, whether the Trustee's allegations are entitled to the presumption of truth and, if so, whether they plausibly give rise to a valid claim for relief. *Id.* However, it is well settled that "the Court should not consider facts that will lead it to controvert the plaintiff's factual allegations, which are to be taken as true." *Stinnett v. Delta Air Lines, Inc.*, 278 F.3d 599, 608 (E.D.N.Y. 2017) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156

(2d Cir. 2006)).  Moreover, *Iqbal* does not support the Insider Defendants' position that a court

must, or can, consider materials extraneous to the complaint to assess the veracity of a plaintiff's

well-pleaded allegations.  Rather, *Iqbal,* as discussed above*,* is oft-cited for the proposition that

while Rule 8's pleading standards do not require "detailed factual allegations," a "formulaic

recitation of the elements of a cause of action will not do" and "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678.  The Trustee has alleged each of the officer or manager position held by

each respective Insider Individual in support of the plausible inference that they are insiders for

purposes of the claims asserted in the Complaint.  *See, e.g.*, Compl. ¶¶ 3-11.  The Trustee's

allegations are entirely consistent with the pleading standards set forth in *Iqbal*.

In assessing the adequacy of a complaint under Rule 12(b)(6) motion, a court "is

generally limited to the facts as presented within the four corners of the complaint, to documents

attached to the complaint, or to documents incorporated within the complaint by reference."

*Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of

Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).  Where a document is not incorporated by reference in

the complaint, "the court may nevertheless consider it where the complaint 'relies heavily upon

its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622

F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  The

Individual Declarations are neither integral to nor incorporated by reference in the Complaint.

Accordingly, the Court will not consider them in deciding this Rule 12(b)(6) motion.  *See, e.g.*,

*Godoy v. Gordon*, No. 09 CIV. 8693 DAB, 2010 WL 3468786, at *3 (S.D.N.Y. Aug. 24, 2010)

(holding that defendant's affidavit and payroll and tax records submitted in support of Rule

12(b)(6) motion to dismiss are "neither integral to nor incorporated by reference in the

Complaint and are therefore inappropriate for the Court to consider in deciding [the] Rule

12(b)(6) motion"); *see also Glob. Network Commc'ns, Inc.*, 458 F.3d at 156 (finding that district

court erred by "consider[ing] external material in its ruling [and] rel[ying] on those materials to

make a finding of fact that controverted the plaintiff's own factual assertions set out in its

complaint").[15]

Finally, the Court considers whether the Insider Defendants have demonstrated grounds

for dismissing the Complaint.  On a Rule 12(b)(6) motion, the movant bears the burden of proof

to show that he is entitled to dismissal of the claims.  *See Muhammad v. New York City Transit

Auth.*, 450 F. Supp. 2d 198, 202 (E.D.N.Y. 2006) (stating that "[d]efendant bears the burden of

proof" on a motion to dismiss under Rule 12(b)(6) (citations omitted)); *Nat'l Ass'n for*

---

[15]   Rule 12(d) speaks to the submission of matters outside the scope of the pleadings in connection with a Rule 12(b)(6) motion, as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  In that way,

> Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material. *See* Fed.R.Civ.P. 12(b). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969 & Supp. 1986).

*Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) (quoting *Fonte v. Board of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).  The Trustee challenges the Individual Defendants' description of their roles with the Debtor and On Five.  In the Complaint, she alleges that certain of the Individual Defendants are well paid officers, directors and managers of the Debtor and On Five.  *See* Compl. ¶¶ 3-10; 53-57; 68.  In opposing the Motion, the Trustee asserts that those allegations are based on the fact that the Debtor paid them large salaries and the representations that they made in legal documents and tax returns that they executed on behalf of the companies, and in correspondence and e-mails with customers.  *See* Opp'n at 16, n.4.  Thus, this matter is not ripe for summary judgment.  *See, e.g.*, *Kimso Apartments LLC v. Dish Network Svcs. LLC*, No. 1:16-cv-06834-AMD-RLM, 2017 WL 8780452, at *8 n.11 (E.D.N.Y. Dec. 20, 2017) (noting court could not "consider exhibits attached to the defendants' motions [to dismiss] that involve factual matters outside the pleadings" (citing *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013))); *Blaylock v. Montalbano*, No. 09-dv-3277 NGG MDG, 2011 WL 4711890, at *1 n.1 (E.D.N.Y. Sept. 30, 2011).  For that additional reason, the Court excludes the Individual Declarations from the record of this motion.

*Advancement of Colored People v. Merrill*, No. 3:18CV1094 (WWE), 2019 WL 4917537, at *2

(D. Conn. Feb. 15, 2019) (noting that "on a motion to dismiss for failure to make a claim, the

movant bears the burden of proof." (citing *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-

1470 CSH, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014))), *aff'd in part, remanded in part*,

939 F.3d 470 (2d Cir. 2019); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)

(explaining that "defendant bears the burden of showing that no claim has been presented" on a

Rule 12(b)(6) motion (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.

1991))).  As noted, the Insider Defendants assert that all twenty-one Claims for Relief alleged

against them must be dismissed.  To meet their burden under Rule 12(b)(6), they must

demonstrate that assuming, *arguendo,* the truth of facts alleged in the Complaint, the Trustee

cannot state a claim to relief that is plausible on its face in support of any of those claims.  *Iqbal,*

556 U.S. at 678; *accord Twombly,* 550 U.S. at 570.  That is to say that they must demonstrate

that the Trustee has failed to provide any "factual content that [would] allow[ ] the court to draw

the reasonable inference that the defendant[s][are] liable for [any] misconduct alleged [in the

Complaint]."  *Iqbal,* 556 U.S. at 678.  The Insider Defendants have not met that burden.

    First, at times in their Motion, the Insider Defendants do not address specific Claims for

Relief.[16]  For example, they contend that:

---

[16]    In their Reply, the Insider Defendants emphasize, again, their generalized objections to the Trustee's claims as a
whole, with no analysis of any specific pleading deficiencies.  Even where specific claims are mentioned, the Insider
Defendants merely reiterate their arguments from the Motion.  For example:

> As discussed at length in the Motion, the impenetrable morass of hyperbolic and conclusory allegations and
> innuendos of wrongdoing on the part of the various defendants set forth in the Complaint *taints the entire
> Complaint* and renders it impossible for the defendants to properly answer any of the claims for relief asserted
> against them (even the handful of claims which are somewhat decipherable).  [emphasis in original]

> Respectfully, the Trustee's reiteration and restatement of these "allegations", even at a "higher volume", does
> not render them sufficient to support the relief requested in the Complaint. The Court should not countenance
> the Trustee's ignorance of basic pleading requirements by permitting the Complaint to stand in its present
> form.  Rather, the Complaint should dismissed [*sic*] outright in its entirety.

> In other words, many of the twenty four (24) alleged Claims for Relief are asserted against an unspecified and undefined conglomeration of "Defendants" thus precluding any of the Moving Defendants from fully and/or specifically address [sic] which of them are actually implicated in each cause of what action.

Mot. ¶ 16.  Second, in breach of the well-settled standards governing Rule 12(b)(6) motions, they

challenge the accuracy of the facts alleged by the Trustee and introduce some of their own facts

to rebut the allegations in the Complaint, as follows:

> The Trustee has simply incorporated allegations of alleged guilt, by innuendo and former and/or existing associations, in a series of widely cast, unsupported and/or inaccurate conclusory statements (many based on pure opinion and/or hearsay) solely as a result of her belief that (in her words) all of "the Defendants operated a shadow business, alter ego corporation, using the Debtor's resources underneath the radar and hidden from the 'bright light' of the Bankruptcy Court." (*See* Complaint at p. 3).

> The Trustee could not be more wrong and has taken the depositions of five (5) of the defendants who have each explained, to the best of their knowledge and belief, how the Debtor, On Five and Liaison worked, their operations and their respective roles.

> By way of example, they have each explained that titles were given to employees were only for customer relations purposes so as to allow them to speak directly to and negotiate directly with customers with the appearance of authority but without the actual authority to bind the Debtor. The Debtor was owned by Mrs. Kim and

---

Again, the Moving Defendants contend that, given the defective nature of the Trustee's pleading of the Complaint as a whole, the entire complaint is tainted and must be dismissed notwithstanding whether any individual claims for relief are, arguably, sufficiently plead[ed].

By way of her Sixth through Eleventh Claims for Relief, the Trustee seeks to avoid and recover certain cash transfers made by the Debtor to Kuk Ja Kim and Sam Kim prior to the petition date. Again, the defective nature of the Trustee's pleading of the Complaint as a whole mandates the dismissal of the entire Complaint. As such, although these specific claims for relief are, arguably, better-plead[ed] than certain others, they should not be permitted to stand alone amid the storm of defectively plead[ed] accusations and attempts at innuendo which plague the Complaint.

As discussed at length in the Motion, the Thirteenth Claim for Relief seeks to have Mr. Spadaro, Mr. Aloisi, Mr. Lewis, Ms. Senger, Ms. Chae and Mr. Quintiliani, each of whom is a former employee or independent contractor of the Debtor, return salary/compensation payments from the Debtor which they earned prior to the Debtor's chapter 11 filing and as well as after the bankruptcy filing based entirely upon conclusory and/or self-serving assertions that these individuals were "secretly" working for On Five and not the Debtor for the entire pre and post-petition period in question.

*See* Reply at 2-4.

was managed by Mr. Kim, when he was healthy enough to address business matters. On Five is owned and managed solely by his daughter-in-law, Bokyoung Kim.

*Id.* When the Insider Defendants focus on specific Claims for Relief, they do so in a summary way, without (i) discussing the facts alleged in support of the Claim, (ii) identifying the elements of the Claim, and (iii) demonstrating why, as a matter of law, the Trustee cannot plausibly allege grounds for relief under the Claim. In short, they make no attempt to meet their burden of demonstrating that the Trustee cannot plausibly state claims for relief against them. They argue that "several of the Trustee's claims for relief are plead[ed] as nothing more than an armload of accusations thrown against a kaleidoscope of named, but not adequately plead[ed], causes of action[,]" and then, in barebones fashion, assert that the Court must dismiss Counts 12, 13, 16, 18, and 19 as follows:

> By way of example only, by way of her Twelfth Claim for Relief, the Trustee improperly attempts to conflate claims for fraud, breach of fiduciary duties, conversion, violations of the automatic stay, turnover of estate property, fraudulent conveyances and unauthorized postpetition transfers. (*See* Complaint at ¶¶ 144, 145 and 146). All of the foregoing claims have separate necessary elements which must be adequately plead[ed]. The Trustee has failed in this regard.

> Also, and again by way of example only, the Thirteenth Claim for Relief seeks to have Mr. Spadaro, Mr. Aloisi, Mr. Lewis, Ms. Senger, Ms. Chae and Mr. Quintiliani, each of whom is a former employee or independent contractor of the Debtor, return salary/compensation payments from the Debtor which they earned prior to the Debtor's chapter 11 filing (i.e., all payments made to them by the Debtor from March 2, 2016 through November 14, 2016) (*see* Complaint at ¶ 148) and as well as after the bankruptcy filing (i.e., all payments made to them by the Debtor from November 14, 2016 to August 22, 2018 on which date the Debtor's chapter 11 case was converted to chapter 7) (*id.*) pursuant to §§ 548, 549 and 550 of the Bankruptcy Code and §§ 272, 276 and 278 of the New York Debtor and Creditor Law without providing anything more than conclusory and/or self-serving assertions that Mr. Spadaro, Mr. Aloisi, Mr. Lewis, Ms. Senger, Ms. Chae and Mr. Quintiliani were "secretly" working for On Five and not the Debtor for the entire period in question (*id.*) and, according to the Trustee, should return all compensation paid to them. There is no basis whatsoever for the Trustee's generic allegations in this regard.

> Similarly, by way of the Sixteenth, Eighteenth and Nineteenth Claims for relief, respectively, the Trustee simply alleges, again in conclusory and self-serving fashion and without any factual support, that Mr. Spadaro, Mr. Aloisi, Mr. Lewis, Ms. Senger, Ms. Chae and Mr. Quintiliani are guilty of "fraud and conversion", "unjust enrichment" and participating in a "civil conspiracy" to "take over the Debtor's entire business and all of the Debtor Property through the formation of On Five and Liaison Apparel, and to avoid payment on any of the debts owed to the Debtor's creditors." (*See* Complaint at ¶ 173 and 175). None of the allegations in the Complaint, even if they are accepted as true, support such claims.

Mot. ¶¶ 19-21. The Insider Defendants have not met their burden of demonstrating grounds for dismissing any of the twenty-one Claims for Relief asserted against them in the Complaint. *See, e.g.*, *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 786 (W.D.N.Y. 2017) ("Here, the Excellus Defendants make no attempt to identify whether Plaintiffs have sufficiently pleaded damages for purposes of each of their claims. Given that it is the movant's burden to show why dismissal is warranted on a 12(b)(6) motion, the Court denies the Excellus Defendants' motion, to the extent it is predicated on an alleged failure to plead any cognizable damages."); *Conciatore v. Leahy's Fuel, Inc.*, No. B-87-846(JAC), 1988 WL 92931, at *2 (D. Conn. June 7, 1988) ("Under the circumstances presented, without intimating a view on whether plaintiff will ultimately succeed on the ERISA claim, the court finds that defendant has failed to carry its burden on a motion to dismiss for failure to state a claim of showing that plaintiff can prove no set of facts in support thereof which would entitle him to relief.").

CONCLUSION

Based on the foregoing analysis, the Motion is denied.

IT IS SO ORDERED.

Dated: January 26, 2021
      New York, NY

                                          /s/ *James L. Garrity, Jr.*
                                          Honorable James L. Garrity, Jr.
                                          United States Bankruptcy Judge

23